## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

KNIGHT FIRST AMENDMENT INSTITUTE )
AT COLUMBIA UNIVERSITY, et al. )
                                                )
      Plaintiffs, )       Case No.: 18-cv-02709
                                                )
v. )
                                                )
CENTRAL INTELLIGENCE AGENCY, et al. )
                                                )
      Defendants. )
_____ )

## DECLARATION OF PATRICIA GAVIRIA,
## DIRECTOR, INFORMATION MANAGEMENT DIVISION,
## OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE

I, Patricia Gaviria, declare as follows:

1.      I am the Director of the Information Management Division ("IMD"), under the Strategy and Engagement Directorate, for the Office of the Director of National Intelligence ("ODNI"). I have held this position since June 12, 2017. Prior to my current position, I held various senior and supervisory roles in the ODNI, including as a Senior Privacy Officer in the Civil Liberties, Privacy, and Transparency Office, as a Senior Adviser to the ODNI Partner Engagement Office, and as a Branch Chief at the National Counterterrorism Center. As part of my current duties, I develop, implement, and manage programs to provide guidance to ODNI on records and classification management, pre-publication review, and Freedom of Information Act ("FOIA") issues.

2.      The IMD falls under the purview of ODNI's Strategy and Engagement Directorate. Its mission, among others, is to implement mandatory information management programs for ODNI and to provide guidance on consistent information management practices across the

Intelligence Community ("IC").[1] IMD's responsibilities include the facilitation and implementation of executive orders, laws, regulations, and ODNI polices related to information management. The IMD has primary responsibility for responding to FOIA requests for ODNI records. *See* 5 U.S.C. § 552. In my current position, I am the final decision-making authority regarding the initial processing of FOIA requests for ODNI.

3.      Through the exercise of my official duties, I have become familiar with this civil action. I submit this declaration in support of Defendants' Motion for Summary Judgment in this proceeding. The purpose of this declaration is to explain and justify, to the extent possible on the public record, the reasoning behind ODNI's assertion of a "Glomar" response pursuant to FOIA Exemptions 1 and 3. 5 U.S.C. § 552(b)(1), (3). It is my understanding that plaintiff is not challenging ODNI's search for potentially responsive records in this case. I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

## I.   RESPONSIBILITIES AND AUTHORITIES OF THE DIRECTOR OF NATIONAL INTELLIGENCE.

4.      Through the exercise of my official duties, I support the Director of National Intelligence ("DNI"). Congress created the position of the DNI in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638,

---

[1]      The IC is comprised of ODNI; the Central Intelligence Agency; the National Security Agency; the Defense Intelligence Agency; the National Geospatial-Intelligence Agency; the National Reconnaissance Office; other offices within the Department of Defense for the collection of specialized national intelligence through reconnaissance programs; the intelligence elements of the Army, the Navy, the Air Force, the Marine Corps, the Coast Guard, the FBI, the Drug Enforcement Administration, and the Department of Energy; the Bureau of Intelligence and Research of the Department of State; the Office of Intelligence and Analysis of the Department of the Treasury; the Office of Intelligence and Analysis of the Department of Homeland Security; and such other elements of any other department or agency as may be designated by the President, or jointly designated by the DNI and heads of the department or agency concerned, as an element of the IC. *See* 50 U.S.C. § 3003(4).

3643-62, 3698-99 (2004) (amending Sections 102 through 104 of Title 1 of the National Security Act of 1947). The responsibilities and authorities of the DNI are set forth in the National Security Act of 1947, as amended. 50 U.S.C. §§ 3001–3234 [hereinafter *National Security Act*]. Subject to the authority, direction, and control of the President, the DNI serves as the head of the IC, and as the principal adviser to the President, the National Security Council, and the Homeland Security Council for intelligence matters related to national security. 50 U.S.C. § 3023(b)(1), (2). The National Security Act also created the ODNI. 50 U.S.C. § 3025(a). The function of the ODNI is to assist the DNI in carrying out his or her duties and responsibilities under the Act and other applicable provisions of law, and to carry out such other duties as may be prescribed by the President or by law. 50 U.S.C. § 3025(b).

5.     The responsibilities and authorities of the DNI include ensuring that national intelligence is provided to the President, heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and Congress. 50 U.S.C. § 3024(a)(1). The DNI is charged with establishing the objectives of; determining the requirements and priorities for; and managing and directing the tasking, collection, analysis, production, and dissemination of national intelligence by IC elements. 50 U.S.C. § 3024(f)(1)(A).

**II.     PLAINTIFFS' FOIA REQUESTS AND ODNI'S RESPONSE.**

6.     By email dated October 19, 2018, plaintiff, the Knight First Amendment Institute sent a FOIA request to IMD seeking the following records:

1.     All procedures or guidance for determining whether to warn, or for delivering a warning to, an intended victim or those responsible for protecting the intended victim, pursuant to Directive 19l;

2.      All records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, including any records relating to duty to warn actions taken with respect to him;

3.      All records concerning any "issue aris[ing] among IC elements" regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him.

4.      All records relating to any dispute referred to the DNI regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him.

7.      By letter dated October 23, 2018, IMD acknowledged receipt of the Knight First Amendment Institute's FOIA request, granted its request for a fee waiver, denied the request for expedited processing, and assigned the request IMD tracking number DF 2019-00032.

8.      In an email dated November 20, 2018, plaintiff, the Committee to Protect Journalists, sent a FOIA request to IMD seeking the same records as requested by plaintiff Knight First Amendment Institute at Columbia University on October 19, 2018. In fact, plaintiff simply attached the Knight First Amendment Institute's FOIA request as plaintiff's own FOIA request. Additionally, plaintiff Committee to Protect Journalists requested a fee waiver and expedited processing. *See* Exhibit A.

9.      By letter dated November 21, 2018, IMD acknowledged receipt of plaintiff Committee to Protect Journalists' FOIA request, granted plaintiff's request for a fee waiver, denied plaintiff's request for expedited processing, and assigned the request IMD tracking number DF 2019-00066. *See* Exhibit B.

10.     The Knight First Amendment Institute filed its Complaint on November 20, 2018. On January 17, 2019, plaintiffs filed an Amended Complaint, at which time plaintiff Committee to Protect Journalists was added as a party. At the time the Amended Complaint was filed, IMD had not fully processed the FOIA requests.

11.     IMD conducted a search for records responsive to part 1 of plaintiffs' requests. IMD identified and searched all ODNI components that were likely to possess records responsive to Part 1 of plaintiffs' FOIA request, and used search methods that were reasonably likely to identify all responsive records. IMD located two documents that originated with other agencies, namely the CIA and NSA. Accordingly, IMD referred the responsive records to the respective agencies for processing and direct response to the plaintiff. It is my understanding that plaintiff is not challenging ODNI's response to Part 1 of its request.

12.     On February 14, 2019, IMD responded to plaintiffs' FOIA requests. IMD noted the two referrals mentioned previously, and raised a "Glomar" response to the remainder of plaintiffs' FOIA requests. IMD neither confirmed nor denied the existence or non-existence of records responsive to parts 2-4 of plaintiffs' FOIA requests, citing FOIA Exemptions 1 and 3. *See* Exhibit C.

13.     It is my understanding that on July 19, 2019, the Court ordered the dismissal without prejudice of plaintiff the Knight First Amendment Institute. Accordingly, this declaration only addresses IMD's response to plaintiff Committee to Protect Journalists' FOIA request.

### III.   ODNI'S GLOMAR DETERMINATION PURSUANT TO FOIA EXEMPTION 1 AND FOIA EXEMPTION 3.

14.     In a typical scenario, a FOIA requester submits a request to an agency for information on a particular subject, and the agency conducts a search for non-exempt records and advises where responsive records have been located. If responsive records are located, the agency provides the non-exempt records or reasonably segregable non-exempt portions of those records to the requester. In this typical circumstance, the agency's response (either to provide or not to provide records the requester sought) actually confirms the existence or nonexistence of the responsive records. This confirmation reveals neither classified information, nor intelligence sources or methods information, because the mere fact that the agency possesses records on a particular subject is often not a classified fact.

15.     In other cases, the confirmation or denial of the existence or non-existence of responsive records would reveal a classified fact or intelligence sources or methods information – for example, whether the IC agency is conducting a particular intelligence activity, has an intelligence interest in a particular individual, or has access to a particular clandestine intelligence source or method. If a requester were to ask for records that would reveal whether the IC has access to a classified intelligence source or method, the mere act of acknowledging the existence of responsive records – even if those records were withheld in full – would in and of itself reveal a classified fact, namely, the existence of the classified source or method. Accordingly, the IC agency would provide what is commonly referred to as a "Glomar" response, wherein a government agency may assert that a particular FOIA statutory exemption covers the fact of the very existence or non-existence of responsive records. The IC agency's Glomar response would ensure that no classified information or intelligence source or method could be discerned by either confirmation or denial of the existence of responsive records.

Section 3.6(a) of Executive Order 13526 provides the authority for the IC to issue such a response, stating that "[a]n agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or non-existence is itself classified under this order or its predecessors." 75 Fed. Reg. at 718-719.

16.     Plaintiff's request presents just such a circumstance, wherein the mere confirmation or denial of the existence or non-existence of responsive records would reveal a classified fact and intelligence sources or methods information – namely, whether the IC has an intelligence interest in a particular individual or entity, whether the IC is conducting particular intelligence activities, and whether the IC utilizes particular intelligence sources or methods.

17.     Therefore, and as further described below, I have determined that ODNI can neither confirm nor deny the existence of the records sought in parts 2-4 of plaintiff's request. As an original classification authority, I have determined that providing a substantive response to plaintiff's request would cause harm to national security cognizable under two FOIA exemptions. First, providing a substantive response to the request would reveal properly classified information protected by Exemption one to FOIA, 5 U.S.C. § 552(b)(1). Second, providing a substantive response to the request would reveal intelligence sources and methods information protected by Exemption three to FOIA, 5 U.S.C. § 552(b)(3), pursuant to the National Security Act, 50 U.S.C. § 3024(i)(1).

**A.     ODNI's Glomar Response Under FOIA Exemption 1.**

18.     FOIA Exemption 1 provides that the FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly

classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The current executive order, which establishes such classification criteria, is Executive Order 13526.

19.     Section 1.1(a) of Executive Order 13526 states that information may be originally classified if: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the United States Government; (3) the information falls within one or more of the categories of information listed in Section 1.4 of the Executive Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security and is able to identify or describe the damage. 75 Fed. Reg. at 707.

20.     Section 1.4 of Executive Order 13526 provides that information may not be considered for classification unless it falls within one or more of eight specifically enumerated categories of information, and its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security. Section 1.4 identifies intelligence activities (including covert action), intelligence sources or methods, cryptology, foreign government information, and foreign relations or foreign activities of the United States (including confidential sources) as categories of information that may be classified. 75 Fed. Reg. at 709. In addition, Section 3.6(a) specifically states that "[a]n agency may refuse to confirm or deny the existence or non-existence of requested records whenever the fact of their existence or non-existence is itself classified under this order or its predecessors." 75 Fed. Reg. at 718-719.

21.     Consistent with Executive Order 13526, and in conjunction with FOIA Exemption 1, I have determined that acknowledging the existence or non-existence of records sought in parts 2-4 of plaintiff's request would require ODNI to reveal currently and properly classified facts that are classified at the SECRET level. The information withheld pursuant to

FOIA Exemption 1 satisfies the procedural and the substantive requirements of Executive Order 13526 governing classification. This information is owned by, and is under the control of, the United States Government. As described below, the information falls under the classification categories listed in section 1.4(c) of the executive order because it concerns intelligence activities or intelligence sources or methods. *See* 75 Fed. Reg. at 709. Further, unauthorized disclosure of this material could reasonably be expected to result in at least serious damage to national security. My determination that the existence or non-existence of the requested records is classified has not been made to conceal a violation of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; to restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security.

22.     As stated above, the information sought by plaintiff in parts 2-4 of the request falls under the classification categories of Executive Order 13526 because it concerns intelligence activities and intelligence sources or methods information. The plaintiff's request seeks information concerning a particular individual, Jamal Khashoggi, and information about steps taken by the Intelligence Community pursuant to its directive on the duty to warn an individual of "intentional killing, serious bodily harm, or kidnapping." *See* ICD 191. The information sought would only exist if underlying information that would trigger actions under ICD 191 were collected by the IC through surveillance efforts targeted at particular individuals or entities that were discussing Mr. Khashoggi during a specific period of time. Likewise, the existence of records regarding any steps taken by the IC under the duty to warn policy would necessarily confirm the existence of records about Mr. Khashoggi. In other words, confirming the existence of any classified records on Mr. Khashoggi or whether steps were taken by the

Intelligence Community pursuant to the duty to warn policy, tends to reveal the ODNI and the

IC's interest in particular individuals or entities, and could alert them that certain intelligence

sources or methods are being employed by specific elements of the IC to collect information on

them. For example, if a particular individual who is the target of IC surveillance mentioned Mr.

Khashoggi and very specific information about him (e.g. an intent to harm Mr. Khashoggi) when

that individual was using a particular method of communication, that individual would learn that

they were being surveilled during a specific period of time and what method the IC was using to

surveil them. Similarly, confirming the non-existence of classified records identifies an area in

which ODNI and the IC may lack interest in particular individuals, entities, or subjects, or an

inability to obtain information on the individuals or entities of interest, and potentially confirms

the success of any evasive techniques.

23.     Further, if ODNI disclosed interest in a person's activities on a case-by-case basis,

this would harm national security by allowing our adversaries to accumulate information and

draw conclusions regarding intelligence sources and methods. For example, if ODNI were to

admit publicly that no information about Persons X, Y, and Z exists on a given subject, but in

response to a separate but substantively identical request about Person A states that it cannot

confirm or deny the existence of records, this would cause individuals to infer that records do

exist about Person A. These inferences would disclose targets and capabilities of IC activities

and inform our adversaries of the degree to which the ODNI and the wider IC is aware of some

of their operations or activities. Therefore, ODNI cannot respond to each FOIA request in

isolation, but must appreciate that our adversaries will examine all released information together

and could take countermeasures to nullify the effectiveness of U.S. intelligence sources and

methods. This compilation of information, if disclosed, could reasonably be expected to cause serious and irreparable damage to the national security of the United States.

24.     Likewise, if ODNI were to confirm the existence of records responsive to plaintiff's request, such confirmation would at the very least indicate that ODNI had a direct or ancillary intelligence interest in a particular person or persons, or entity or entities. On the other hand, if ODNI were to respond by admitting that it did not possess any responsive records, it would indicate that ODNI had no intelligence interest in any of these individuals or entities, and that the IC had no associated intelligence activities. Either confirmation would reveal sensitive information about intelligence activities, priorities, sources, and methods that are protected from disclosure by the National Security Act and Executive Order 13526.

25.     Finally, I have reviewed the Amended Complaint and plaintiff's characterizations of news reports represented in the Amended Complaint, and I nonetheless maintain my assessment regarding the harm to national security that would result if ODNI confirmed the existence or non-existence of records responsive to parts 2-4 of plaintiff's request.

26.     Accordingly, a Glomar response to parts 2-4 of plaintiff's FOIA request is appropriate because the existence or non-existence of ODNI records responsive to these parts of the request is a currently and properly classified fact, the disclosure of which could be expected to cause at least serious damage to national security. This classified fact is therefore exempt from disclosure under FOIA Exemption 1.

**B.     ODNI's Glomar Response Under FOIA Exemption 3.**

27.     FOIA Exemption 3 protects information that is specifically exempted from disclosure by statute. A withholding statute under FOIA Exemption 3 must: (A) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or

(B) establish particular criteria for withholding or refer to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

28.   Section 102A(i)(1) of the National Security Act provides that "the [DNI] shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). The sources and methods provision of the National Security Act has long been held to qualify as a withholding statute in accordance with FOIA Exemption 3. Agencies are not required to identify and describe the damage to national security that reasonably could be expected to result from the unauthorized disclosure of these sources and methods. Agencies are only required to establish that the withheld information constitutes intelligence sources and methods.

29.   After careful review, and consistent with the National Security Act and FOIA Exemption 3, I have determined that disclosing whether or not the ODNI maintains records responsive to parts 2-4 of plaintiff's FOIA request would reveal the existence or non-existence of IC intelligence sources and methods information that the DNI is statutorily charged with protecting. The information withheld pursuant to FOIA Exemption 3 constitutes intelligence sources and methods information, and I find it to be properly exempt from disclosure under the National Security Act. And, although FOIA Exemption 3 does not require that agencies establish the harm in the disclosure of such information, the harms described above in relation to FOIA Exemption 1 apply with the same force in the FOIA Exemption 3 context. For example, acknowledging the existence or non-existence of records responsive to parts 2-4 of the request could reveal whether an intelligence method is being used against a particular individual or entity, thereby compromising national security.

## CONCLUSION

30.     Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this _____ day of August 2019.

Patricia Gaviria
Director, Information Management Division

**EXHIBIT A**

DF-2019-00066

**TERRIEAD**

| | |
|---|---|
| **From:** | Avi Asher Schapiro <aaschapiro@cpj.org> |
| **Sent:** | Tuesday, November 20, 2018 8:41 AM |
| **To:** | DNI-FOIA |
| **Subject:** | FOIA Request from the Commmitee to Protect Journalists |
| **Attachments:** | EXHIBIT_A.pdf |

NOV 2 0 2018

To Whom It May Concern:

The Committee to Protect Journalists ("CPJ") submits this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records relating to the journalist Jamal Khashoggi. CPJ seeks the same documents requested by the Knight First Amendment Institute at Columbia University ("Knight Institute") on October 19, 2018. The Knight Institute's request is attached as Exhibit A.

CPJ requests expedited processing for the same reasons laid out in the Knight Institute's request.

CPJ requests a waiver of document search, review, and duplication fees on the grounds that (a) disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester," 5 U.S.C. § 552(a)(4)(A)(iii), and (b) CPJ is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use, 5 U.S.C. § 552(a)(4)(A)(ii)(II).

--
--

Avi Asher-Schapiro
North America Researcher, Committee to Protect Journalists
831 334 5688

*DF-2019-00066*

# KNIGHT
# FIRST AMENDMENT
# INSTITUTE

at Columbia University

NOV 20 2018

**RAMYA KRISHNAN**
Staff Attorney

October 19, 2018

Patricia Gaviria, Director
Information Management Division
ATTN: FOIA/PA
Office of the Director of National
    Intelligence
Washington, D.C. 20511

**Re:    Freedom of Information Act Request**
      **Expedited Processing Requested**

To whom it may concern,

The Knight First Amendment Institute at Columbia University ("Knight
Institute" or "Institute")[1] submits this request pursuant to the Freedom of
Information Act ("FOIA", 5 U.S.C. § 552, for records relating to the
journalist Jamal Khashoggi.

## I. Background

When an Intelligence Community ("IC") element acquires information
indicating an impending threat of intentional killing, serious bodily injury,
or kidnapping directed at a person, Intelligence Community Directive 191
("Directive 191") requires the element to "warn the intended victim or those
responsible for protecting the intended victim, as appropriate."[2] Directive
191 further obligates IC elements to "document and maintain records" on
any actions taken pursuant to that duty. Directive 191, § 13.

Jamal Khashoggi, a columnist for the *Washington Post*, is believed to have
been killed after entering a Saudi consulate in Istanbul on October 2, 2018.[3]

---

[1] The Knight First Amendment Institute is a New York not-for-profit
organization based at Columbia University that works to preserve and expand the
freedoms of speech and the press through strategic litigation, research, and public
education.

[2] Director of National Intelligence, Intelligence Community Directive 191 § E.1
July 21, 2015), https://perma.cc/49P8-J69X.

[3] *Jamal Khashoggi: Saudi Journalist Vanishes in Istanbul*, BBC News (Oct. 4, 2018),
https://perma.cc/VD23-B3NX; David D. Kirkpatrick & Carlotta Gall, *Audio*

The *Washington Post* reports that, before his disappearance, U.S. intelligence agencies intercepted communications of Saudi officials discussing a plan to capture Khashoggi.[4] It is not publicly known, however, whether the U.S. government warned Khashoggi of that threat. The Knight Institute seeks to inform the public about the U.S. government's compliance, or failure to comply, with its duty to warn Khashoggi of any known and impending threats to his safety.

## II. Records requested

The Knight Institute seeks the following records:

1.  All procedures or guidance for determining whether to warn, or for delivering a warning to, an intended victim or those responsible for protecting the intended victim, pursuant to Directive 191;

2.  All records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, including any records relating to duty to warn actions taken with respect to him;[5]

3.  All records concerning any "issue aris[ing] among IC elements" regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him. *See* Directive 191, § G.1.

4.  All records relating to any dispute referred to the DNI regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him. *See* Directive 191, § G.2.

---

*Offers Gruesome Details of Jamal Khashoggi Killing, Turkish Official Says,* N.Y. Times (Oct. 17, 2018), https://perma.cc/8RGV-7CVE.

[4] Loveday Morris, Souad Mekhennet & Kareem Fahim, *Saudis Are Said To Have Lain in Wait for Jamal Khashoggi,* Wash. Post (Oct. 9, 2018), https://perma.cc/82WY-EUJT.

[5] "Duty to warn actions" include but are not limited to senior officer reviews of threat information and determinations; justifications not to warn the intended victim based on waiver criteria; coordination with other IC elements (such as the Federal Bureau of Investigation or the Central Intelligence Agency) to determine how best to pass threat information to the intended victim; and communication of threat information to another IC element or U.S. government agency for delivery to the intended victim. *See* Directive 191, § F.13.

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

## III. Application for Expedited Processing

The Knight Institute requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). Obtaining, analyzing, and publicly disseminating information about government activity are among the Institute's core activities.[6] Furthermore, the requested records are urgently needed to inform the public about actual or alleged government activity. The disappearance of Jamal Khashoggi is the subject of national attention. Last week, a bipartisan group of 22 senators sent a letter to President Donald Trump expressing concern about the incident and requesting that the President make a determination on the imposition of sanctions on the responsible party within 120 days.[7]

## IV. Application for Waiver or Limitation of Fees

The Knight Institute requests a waiver of document search, review, and duplication fees on three grounds. First, the disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Second, the Institute is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). Third, the Institute qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

\*     \*     \*

Thank you for your attention to our request.

Sincerely,

/s/ Ramya Krishnan
Ramya Krishnan

---

[6] About the Knight Institute, https://perma.cc/S9PN-J4ZY.

[7] Press Release, Sen. Bob Corker, *Corker, Menendez, Graham, Leahy Letter Triggers Global Magnitsky Investigation into Disappearance of Jamal Khashoggi* (Oct. 10, 2018).

Adi Kamdar
Knight First Amendment Institute at
   Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
ramya.krishnan@knightcolumbia.org
 646 745-8500

4

**EXHIBIT B**

WASHINGTON, DC 20511

Avi Asher-Schapiro                                                November 21, 2018
North America Research
Committee to Protect Journalists
330 7th Avenue, 11th Floor
New York, NY  10001

Reference:  ODNI Case DF-2019-00066

Dear Mr. Asher-Schapiro:

This acknowledges receipt of your email dated 20 November 2018 (Enclosure), received in the Information Management Division of the Office of the Director of National Intelligence (ODNI) on 20 November 2018.  Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended, you requested records relating to the journalist Jamal Khashoggi, as requested by the Knight First Amendment Institute at Columbia University ("Knight Institute") on 19 October 2018.  Please see Enclosure for your entire request.

As indicated, your request duplicates another request (DF-2019-00032) that is currently being processed.  We have initiated searches of our holdings and have received potentially responsive documents from one component of the ODNI.  We are currently awaiting responses from the remaining components that were tasked.  We will process your request along with the duplicate and a response will be sent to you upon completion.  **Your request for a fee waiver has been granted.  If there are any fees associated with the processing of this request, they will be waived.**

Your request for expedite is also being handled as in case DF-2019-00032.  Please be advised that ODNI handles all requests in the order we received them on a "first-in, first-out" basis.  We make exceptions to this rule only when a requester establishes a compelling need under the standards in our regulations.  A "compelling need" exists:  1) when the matter involves an imminent threat to the life or physical safety of an individual, or 2) when a person primarily engaged in disseminating information makes the request and the information relevant to a subject of Public urgency concerning an actual or alleged Federal government activity.  Your request does not demonstrate a "compelling need" under these criteria and, therefore, we deny your request for expedited processing.

Although you have 90 days from the date of this letter to appeal our denial of your request for expedite, **we would appreciate if you would allow us sufficient time to complete our processing of your request.  You will have the right to appeal any denial of information at that time.**

If you have any questions, please feel free to email our Requester Service Center at DNI-FOIA@dni.gov or call us at (301) 243-1499.  You can also contact ODNI's FOIA Liaison at DNI-FOIA-Liaison@dni.gov.

Sincerely,

Sally A. Nicholson
Chief, FOIA Branch
Information Management Division

Enclosure

**EXHIBIT C**

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
WASHINGTON, DC 20511

Jameel Jaffer                                                      February 14, 2019
Knight First Amendment Institute at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115

Avi Asher-Schapiro
Committee to Protect Journalists
330 7th Avenue, 11th Floor
New York, NY 10001

SUBJECT:  FOIA Requests ODNI Case No: DF-2019-00032 & DF-2019-00066;
          Civil Case No: 1:18-cv-02709

Dear Mr. Jaffer and Mr. Asher-Schapiro:

    This letter responds to the Freedom of Information Act (FOIA) requests from Ramya
Krishnan on behalf of the Knight First Amendment Institute at Columbia University dated
October 19, 2018 (Enclosure 1) and Avi Asher Schapiro on behalf of the Committee to Protect
Journalists dated November 20, 2018 (Enclosure 2).

    Your requests were processed in accordance with the FOIA, 5 U.S.C. § 552, as amended.
A search of our records located documents responsive to item 1 of your request.  These
documents originated with other agencies involved in this case. As a result, those agencies will
process the responsive documents and respond directly to you.

    Regarding items 2 through 4 of your respective requests, in accordance with Section 3.6(a)
of Executive Order 13526, the ODNI can neither confirm nor deny the existence or nonexistence
of the requested records.  The fact of the existence or nonexistence of the requested records is itself
currently and properly classified, and could reveal intelligence sources and methods information
that is protected from disclosure pursuant to Section 102A(i)(1) of the National Security Act of
1947, as amended, 50 U.S.C. § 3024(i)(1).  Therefore, pursuant to FOIA exemptions (b)(1) and
(b)(3), the ODNI can neither confirm nor deny the existence or nonexistence of records responsive
to these requests.

    We have completed our processing of your FOIA requests.  If you have any questions,
you may contact Attorney Anotonia Konkoly of the Department of Justice at (202) 514-2395 or
antonia.konkoly@usdoj.gov.

                                    Sincerely,

                                    Sally A. Nicholson

                                    Sally A. Nicholson
                                    Chief, FOIA Branch
                                    Information Management Division

Enclosures