## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, *et al.* | ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | Civil Action No. 1:18-cv-2709 (TNM) |
| CENTRAL INTELLIGENCE AGENCY, *et al.* | ) ) ) | |
| *Defendants.* | ) ) ) | |

## DECLARATION OF LINDA M. KIYOSAKI

I, LINDA M. KIYOSAKI, hereby declare and state:

1.      I am the Acting Chief of Policy, Information, Performance, and Exports at the

National Security Agency ("NSA" or "Agency"). I am also the Deputy Chief of this

organization. I have been employed with NSA since 1985. I am responsible for oversight of

NSA's Freedom of Information Act Office ("NSA FOIA Office"). This office has primary

responsibility for responding to requests for NSA records made pursuant to the Freedom of

Information Act ("FOIA"), 5 U.S.C. Section 552. Prior to this assignment, I have held various

leadership positions throughout the Agency, and I have a detailed understanding of NSA's

operations, management processes, and resources. My prior positions include serving as the

Senior Intelligence Analysis Authority; the Associate Director for Strategy, Programs and

Performance for the Mission Management Investment Portfolio; an NSA representative to CIA's

Counterterrorism Center; an NSA representative to the FBI; and the Enterprise Engagement and Mission Management Associate Director.

2.      The Chief of Policy, Information, Performance, and Exports has TOP SECRET original classification authority ("OCA") pursuant to Section 1.3 of Executive Order ("E.O.") 13526, dated 29 December 2009 (75 Fed. Reg. 707). I am an OCA while acting in this position, and it is my responsibility to assert the applicable FOIA exemptions for NSA information in the course of litigation.

3.      Through the exercise of my official duties, I have become familiar with the current litigation, which arose out of a complaint filed by the Knight First Amendment Institute at Columbia University[1] (hereinafter "Knight Institute") and the Committee to Protect Journalists (hereinafter "CPJ") alleging that, among other things, the Agency committed a violation of the FOIA by failing to make and communicate a determination within the statutory time limit, and failed to promptly make responsive records available to the Knight Institute and CPJ. The purpose of this declaration is to describe NSA's origin and mission, explain the role of signals intelligence in safeguarding national security, and explain why NSA could neither confirm nor deny the existence of some records sought, as doing either would reveal information that is both currently and properly classified in accordance with E.O. 13526 as well as protected from disclosure by statute.

## I.   NSA'S ORIGIN AND MISSIONS

4.      The NSA was established by Presidential Directive in October 1952 as a separately-organized agency within the Department of Defense ("DoD") under the direction,

---

[1] The Knight Institute remains a party to this litigation but withdrew its claims via stipulation of dismissal, without prejudice to its ability to seek fees at a later point in the litigation. Its claims were dismissed 19 July 2019.

authority, and control of the Secretary of Defense. NSA has two primary missions: (1) to collect, process, analyze, produce, and disseminate signals intelligence ("SIGINT") information for foreign intelligence and counterintelligence purposes to provide support for national and departmental requirements and for the conduct of military operations; and (2) to conduct information assurance and cybersecurity activities.

5.     NSA has developed a sophisticated worldwide SIGINT collection network that acquires foreign signals. In performing its SIGINT mission, NSA exploits foreign signals to obtain intelligence information necessary to the national defense, national security, and/or the conduct of foreign affairs. The technological infrastructure that supports NSA's SIGINT collection network has taken years to develop at a cost of billions of dollars and significant human effort. It relies on sophisticated collection and processing technologies designed to keep pace with challenging new technological developments.

## II.   IMPORTANCE OF SIGINT TO THE NATIONAL SECURITY

6.     Intelligence information is primarily gathered and analyzed to provide key decision-makers with the information necessary to safeguard the national security of the United States. SIGINT information provided by NSA is routinely distributed to a wide variety of senior government officials, including the President; the President's National Security Advisor; the Director of National Intelligence; the Secretaries of Defense, State, Treasury, and Commerce; U.S. ambassadors serving in posts abroad; the Joint Chiefs of Staff; and the Unified and Specified Commanders. SIGINT information is also disseminated to several agencies and departments, including the Central Intelligence Agency; the Federal Bureau of Investigation; the Drug Enforcement Administration, the Departments of the Army, Navy, and Air Force; and various intelligence components of DoD. Information provided by NSA in a classified setting to

3

the military, other government agencies, and officials within the Intelligence Community ("IC")

is relevant to a wide range of important issues including military order of battle, threat warnings

and readiness, arms proliferation, terrorism, and foreign aspects of international narcotics

trafficking. This sensitive information is often critical to the conduct of U.S. foreign policy and

of U.S. military operations around the world. Moreover, intelligence produced by NSA is often

unobtainable by other means.

7.       NSA's ability to produce SIGINT depends on its ability to access foreign signals.

The SIGINT capabilities used to access foreign signals are both expensive and fragile. Public

disclosure of either the capability to collect specific signals or the substance of the SIGINT

information itself can easily alert foreign adversaries to the vulnerability of their signals—

potentially eliminating critical sources of information.

8.       Communications intelligence ("COMINT") is the subset of SIGINT information

obtained from intercepted foreign communications. As NSA's ability to exploit foreign

communications is particularly fragile, secrecy is fundamental to the COMINT process. The

identity of the specific communicants whose communications are intercepted, the degree of

success in exploiting these communications, and the vulnerability of particular foreign

communications are all maintained in strictest secrecy. Disclosure of this information would

encourage countermeasures by the targets of NSA's COMINT efforts. Disclosure of a single

intercepted communication—or even disclosure of the existence of a particular intercepted

communication—could reveal intelligence collection techniques applied around the world. Such

a disclosure could prompt adversaries to change the way they communicate, thus inhibiting

access to their communications and denying the United States access to information crucial to

the defense of the United States both at home and abroad. If an intercept operation is

4

successfully defeated, all intelligence from that source is lost unless and until NSA can establish

new and equivalent exploitation of those communications. If a source becomes unavailable, the

military, national policymakers, combatant commanders, and the IC must operate without the

information the communications provided. Such losses are extremely harmful to the national

security of the United States.

9.    Congress has recognized the inherent sensitivity of the intelligence activities of

the NSA and the larger IC, passing several statutes to protect these activities from disclosure,

including statutes to protect NSA's activities and COMINT efforts specifically. These statutes

recognize that intelligence collection is vulnerable to the countermeasures of a foreign power or

terrorist organization, and that the loss of valuable foreign intelligence information needed by

national policymakers, combatant commanders, and the IC would be of significant detriment to

the security of the United States.

10.    Three statutes in particular are relevant to this FOIA request. Section 102A(i)(1)

of the National Security Act of 1947 authorizes the IC to protect from disclosure its sensitive

intelligence activities and efforts. [2] Further, under 18 U.S.C. Section 798, the IC is authorized to

protect from disclosure information about COMINT activities specifically. Finally, under Section

6 of the National Security Act of 1959 ("NSA Act"), NSA is broadly authorized to protect from

disclosure information about its organization, functions, and activities. [3]

## III.    PROCEDURAL BACKGROUND

11.    On 19 October 2018, the Knight Institute submitted a three part FOIA request to

NSA (hereinafter "the request"). Part 1 sought "[a]ll procedures and guidance for determining

---

[2] Pub. L. No. 108-458 § 102A(i)(1), 118 Stat. 3651, 50 U.S.C. § 3024 (i)(1).

[3] 50 U.S.C. § 3605.

whether to warn, or for delivering a warning to, an intended victim or those responsible for protecting the intended victim, pursuant to Directive 191." Part 2 sought "[a]ll records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, including any records relating to duty to warn actions taken with respect to him." Part 3 sought "[a]ll records concerning any 'issue aris[ing] among IC elements' regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him." NSA responded by letter on 8 November 2018, assigning the Knight Institute's request case number 105522. On 20 November 2018, CPJ submitted a FOIA request seeking the documents sought by the Knight Institute's request. NSA responded to CPJ's request on 6 December 2018, assigning it FOIA Case number 105832. A true and correct copy of this response letter is attached to my declaration as Exhibit A.

12.     The Knight Institute filed a complaint on 20 November 2018 in the District Court for the District of Columbia. On 17 January 2019, the complaint was amended to include CPJ.

13.     NSA processed and conducted searches to identify documents potentially responsive to Part 1 of the request. NSA identified and searched all NSA components that were likely to possess records responsive to Part 1 of the FOIA request and used search methods that were reasonably likely to identify all responsive NSA records. Two documents, totaling 21 pages, were identified as responsive.[4] These documents were released in part to the Knight Institute and CPJ on 11 March 2019. In that response letter, NSA also indicated that it could neither confirm nor deny the existence of records responsive to Parts 2 and 3 of the request. A true and correct copy of this response letter is attached to my declaration as Exhibit B. It is my

---

[4] NSA was informed by the Office of the Director of National Intelligence ("ODNI') that one of these two documents was located in the course its search related to this same request. As it had already been located in NSA's search, this document was not processed by NSA as a referral.

understanding that CPJ, the remaining plaintiff in this matter, is not challenging any aspect of NSA's response to Part 1 of its request.

14.     Because I understand that former plaintiff Knight Institute has voluntarily dismissed its claims, without prejudice, this declaration addresses only NSA's response to remaining plaintiff CPJ.

## IV.     NSA'S *GLOMAR* DETERMINATION

15.     Because Parts 2 and 3 of Plaintiff's request sought intelligence records, NSA can neither confirm nor deny that it has such records, as doing so could reveal whether or not NSA engaged in certain intelligence activities, or whether NSA did or did not target particular communications for collection. Accordingly, NSA asserted a "*Glomar*" response pursuant to FOIA Exemptions 1 and 3 in response to Parts 2 and 3 of the FOIA request.[5]

16.     Based upon my position as the Acting Chief of Policy, Information, Performance, and Exports, the Agency official responsible for the processing of all requests made pursuant to FOIA, I am confident that NSA could not acknowledge the existence or non-existence of intelligence information in this case, as doing so in response to this request would reveal information that is currently and properly classified in accordance with E.O. 13526 as well as protected from disclosure by statute.

### a.  The Fact of the Existence or Non-Existence of the Records Requested is Classified and thus Protected from Disclosure per FOIA Exemption 1.

17.     Confirming the existence or non-existence of responsive records would disclose information that is currently and properly classified and is therefore exempt from disclosure under the FOIA. Exemption 1 protects from disclosure information that has been deemed

---

[5] A decision neither to confirm nor deny the existence of information requested pursuant to the FOIA is commonly known as a "Glomar" response in reference to the subject of a FOIA request for records pertaining to a ship, the Hughes Glomar Explorer." *See Phillipi v. CIA*, 546 F.2d 1009 (D.C. 1976).

classified "under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and is "in fact properly classified pursuant to such Executive order."[6] The current Executive Order that establishes such criteria is E.O. 13526. Executive Order 13526 § 1.1(a) provides that information may be originally classified under the terms of this order if certain criteria are met. First, the information must owned by, produced by or for, or is under the control of the U.S. Government.[7] In this case, any records responsive to Plaintiffs' requests would necessarily be held by the NSA, and would therefore be "under the control of the United States Government." The information must also fall within one or more of the categories of information listed in Section 1.4 of the Executive Order, and an original classification authority, responsible for classifying the information, must determine that the unauthorized disclosure of the information reasonably could be expected to result in some level of articulable damage to the national security.[8] Section 3.6(a) of E.O. 13526 provides that "[a]n agency may refuse to confirm or deny the existence or non-existence of requested records whenever the fact of their existence or non-existence is itself classified under this order or its predecessors."[9]

18.      Section 1.4 of E.O. 13526 provides that information may be considered for classification if it falls within at least one of eight specifically enumerated categories of information. The fact of the existence or non-existence of records responsive to Parts 2 and 3 of the request is currently and properly classified pursuant to Section 1.4(c) of E.O. 13526. Section

---

[6] 5 U.S.C. Section 552(b)(1).

[7] *See* E.O. 13526 § 1.1(a)(2).

[8] *See* E.O. 13526 § 1.1.

[9] E.O. 13526 § 3.6(a).

1.4(c) provides for the classification of "intelligence activities (including covert action), intelligence sources or methods, or cryptology."[10]

19.     Parts 2 and 3 of the request sought records relating to the IC's duty to warn pursuant to ICD 191 as applied to a specific individual. NSA can neither confirm nor deny the existence of such records. Confirming the existence of responsive records would necessarily indicate the existence of underlying intelligence information relating to a threat to a particular individual (Jamal Khashoggi) during a particular time frame (the period preceding his death). Disclosing the existence of such records would tend to reveal information relating to NSA's SIGINT collection activities, sources, and methods, and/or (with respect to Part 3 of the request) the intelligence activities of other IC components, because the triggering of a duty to warn, as set forth in ICD 191 necessarily implies the existence of some underlying intelligence information. Confirming the existence of documents responsive to Parts 2 and 3 of CPJ's request would, at minimum, indicate that NSA or another IC element had collected or acquired intelligence related to a threat to Mr. Khashoggi. Such confirmation could, in turn, tend to reveal sources and methods that NSA or another IC element used to gather such information—thus threatening or undermining the future effectiveness or viability of these sources and methods. Conversely, denying the existence of responsive records would tend to indicate a lack or dearth of underlying intelligence information. Disclosing this information could reveal gaps in IC capabilities, the success of evasive tactics taken by adversaries, and/or IC intelligence collection priorities. Thus, the information that would be disclosed in either confirming or denying the existence of responsive records falls squarely within the category of information addressed by Section 1.4(c) of E.O. 13526.

---

[10] E.O. 13526. § 1.4(c).

20.     The fact of the existence or non-existence of records responsive to Parts 2 and 3 is currently and properly classified TOP SECRET pursuant to Section 1.2(a)(1) of E.O. 13526.[11] This fact is classified TOP SECRET because either confirming or denying the existence of such records could reasonably be expected to cause "exceptionally grave damage"[12] to national security. This level of damage could reasonably be expected as disclosure would reveal NSA capabilities, activities, and intelligence priorities—as well as the capabilities, activities, and intelligence priorities of other IC agencies. Acknowledging the existence or non-existence of responsive records related to particular events or conversations could provide our adversaries with critical information about the IC's capabilities and limitations. Our adversaries could exploit this information in order to conduct their activities more securely—which in turn could inhibit future intelligence collection and affect the IC's ability to counter threats to the national security of the United States

21.     Further, NSA must use the *Glomar* response consistently in all cases where the existence or non-existence of records responsive to a FOIA request is a classified fact. This includes instances in which the NSA does not possess records responsive to a particular request. NSA cannot decide on a on a case-by-case basis to disclose when it does not possess responsive records, as this would indicate that certain matters are not of foreign intelligence interest or that NSA has been unsuccessful in collecting relevant foreign intelligence information. Further, if NSA were to respond to some requests for intelligence information by disclosing that no responsive records exist, while issuing other responses that neither confirm nor deny the

---

[11] The determination that the existence or non-existence of the requested records is classified has not been made to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; to restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security.

[12] E.O. 13526 § 1.2(a)(1).

existence of responsive records, it would give rise to the inference that a *Glomar* response is an acknowledgment that some records do exist. Over time, by implication, such a practice would disclose NSA's priorities and capabilities, and could inform our adversaries of the degree to which NSA is able to exploit particular communications.[13] This would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods. NSA, therefore, cannot respond to each FOIA request in isolation, but must assume that our adversaries may examine all released information together.

22.     NSA has not made any official public disclosures confirming or denying whether or not it collected or acquired credible and specific information indicating an impending threat of intentional killing, serious bodily injury, or kidnapping directed at Jamal Khashoggi, or whether Khashoggi was or was not warned of such a threat pursuant to Directive 191.

23.     I have reviewed Plaintiffs' characterization of news reporting represented in the First Amended Complaint, and I nonetheless maintain my assessment regarding the serious harm to national security that would result if the NSA confirmed the existence or non-existence of records responsive to Parts 2 and 3 of plaintiff's request.

24.     As the fact of the existence or non-existence of records responsive to Parts 2 and 3 of this request is properly classified TOP SECRET "under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and is "in fact properly classified pursuant to such Executive order," it is therefore a fact exempt from disclosure pursuant to FOIA Exemption 1.

---

[13] E.O. 13526 specifically contemplates the danger a mosaic of unclassified information can present, providing that compilations of items of information that are individually unclassified may be classified when compiled, if certain conditions are met.

**b. The Fact of the Existence or Non-Existence of the Records Requested is Protected from Disclosure by Statute and thus Protected from Disclosure per FOIA Exemption 3.**

25.     The acknowledgment of the existence or non-existence of the intelligence information requested is also protected from disclosure by statute. Pursuant to Exemption 3, the FOIA does not require the disclosure of matters that are specifically exempted from disclosure by statute, provided that such statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or establishes particular criteria for withholding or refers to particular types of matters to be withheld.[14] Review of the application of Exemption 3 consists solely of determining that the statute relied upon qualifies as an Exemption 3 statute, and that the information withheld falls within the scope of the statute.

26.     The information at issue here falls squarely within the scope of three statutes in particular. First, Section 102A(i)(1) of the National Security Act of 1947, as amended, authorizes the IC to protect from disclosure its sensitive intelligence activities and efforts.[15] Second, Section 6 of the National Security Agency Act of 1959 ("NSA Act")[16] authorizes NSA to protect from disclosure information about its organization, functions, and activities. Finally, with respect to Part 2 of the request in particular, 18 U.S.C. § 798 authorizes the IC to protect from disclosure information about COMINT activities specifically. Because NSA is protected from disclosing the information covered by these statutes, the existence or non-existence of responsive records is a fact exempt from disclosure pursuant to FOIA Exemption 3.

27.     First, Section 102A(i)(1) of the National Security Act of 1947, as amended, states that "[t]he Director of National Intelligence shall protect the intelligence sources and methods

---

[14] 5 U.S.C. § 552(b)(3).

[15] Pub. L. No. 108-458 § 102A(i)(1), 118 Stat. 3651, 50 U.S.C. § 3024 (i)(1).

[16] 50 U.S.C. § 3605.

from unauthorized disclosure." NSA, as a member agency of the U.S. Intelligence Community,

must also protect intelligence sources and methods. The protection afforded to intelligence

sources and methods is absolute.[17] Whether the sources and methods at issue are classified is

irrelevant for purposes of the protection afforded by Section 102A(i)(1). Because either

confirming or denying the existence of records responsive to Parts 2 and 3 of this request would

reveal information about the existence or non-existence of underlying intelligence information

relating to a threat to a particular individual, doing so would also reveal information about IC

intelligence sources and methods. Section 102A(i)(1) exempts such disclosure.

28.     The second applicable statute is a statutory privilege unique to NSA. NSA's

statutory privilege is set forth in Section 6 of the NSA Act, 50 U.S.C. § 3605, which provides

that "[n]othing in this chapter or any other law . . . shall be construed to require the disclosure of

the organization or any function of the National Security Agency, or any information with

respect to the activities thereof." By this language, Congress expressed its finding that disclosure

of *any* information relating to NSA activities is potentially harmful.[18] Section 6 states

unequivocally that NSA cannot be compelled by statute to disclose any information with respect

to its activities.[19] Further, NSA is not required to demonstrate specific harm to national security

when invoking this statutory privilege—NSA need only to show that the information it seeks to

protect relates to its activities, and therefore falls within the scope of Section 6.[20] While, in this

case, the harm from the disclosure of the existence or non-existence of records responsive to

---

[17] *See CIA v. Sims*, 471 U.S. 159, 167 (1985).

[18] *See e.g., Linder v. NSA*, 94 F.3d 693, 698 (D.C. Cir. 1996) ("The protection afforded by section 6 is, by its very terms, absolute.").

[19] *Hayden v. NSA*, 608 F.2d 1381, 1390 (D.C. Cir. 1979); *see also Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009); *Students Against Genocide v. Dep't of State*, 257 F.3d 828 (D.C. Cir. 2001); *People for the American Way Found. v. NSA*, 462 F. Supp. 2d 21, 30 (D.D.C. 2006).

[20] *See Larson*, 565 F.3d at 868.

Parts 2 and 3 of plaintiff's request would be exceptionally grave—as disclosure would reveal

classified information about NSA intelligence activities, sources, and methods—information on

NSA's functions and activities is protected from disclosure regardless of classification. Here,

because acknowledging the existence or non-existence of responsive records to Parts 2 and 3 of

plaintiff's request would reveal information about NSA's functions and activities, 50 U.S.C. §

3605 exempts such disclosure.

29.     Finally, with respect to Part 2 of the request in particular, the fact of the existence

or non-existence of responsive records is protected from disclosure by 18 U.S.C. § 798. Part 2 of

the request specifically seeks NSA records related to the duty to warn as applied to Jamal

Khashoggi. 18 U.S.C. § 798 prohibits the unauthorized disclosure of classified information: (i)

concerning the communications intelligence activities of the United States; or (ii) obtained by the

process of communications intelligence derived from the communications of any foreign

government. The term "communication intelligence," as defined by Section 798, means the

"procedures and methods used in the interception of communications and the obtaining of

information from such communications by other than the intended recipients." Thus, information

concerning COMINT—which, as explained above, is a particularly fragile subset of SIGINT—is

specifically protected from disclosure pursuant to 18 U.S.C. § 798. This statutory scheme

underscores Congress's commitment to protecting COMINT, which is central to NSA's mission,

from disclosure. With respect to Part 2 of the request, either confirming or denying the existence

of responsive records would reveal information about the existence or non-existence of

underlying NSA COMINT. The duty to warn, as set forth in ICD 191, could only be triggered by

the existence of intelligence information—and, with respect to NSA specifically, COMINT.

Confirming the existence of responsive records would necessarily confirm that NSA collected

relevant COMINT. Conversely, denying the existence of responsive records would indicate a lack or dearth of COMINT. Because disclosing this information would reveal information related to NSA's COMINT activities, targets, priorities, and capabilities, it is protected from disclosure by 18 U.S.C. § 798.

30.     I have determined that IC intelligence sources and methods, information related to NSA's activities and functions, and information related to COMINT would be revealed if NSA confirmed or denied the existence of records responsive to the FOIA request. Based upon my review, I therefore conclude that the acknowledgment of the existence or non-existence of intelligence information is protected from disclosure by statute pursuant to the following three authorities: (1) Section 102A(i)(1) of the National Security Act of 1947, because the information concerns intelligence sources and methods; (2) Section 6 of the NSA Act, because the information concerns the function and activities of NSA; and (3) 18 U.S.C. § 798, because with respect to Part 2 of the request disclosure would reveal information related to NSA's COMINT activities, as described above. For these reasons, the fact of the existence or non-existence of records responsive to Parts 2 and 3 of the request has been properly determined to be statutorily protected from disclosure. The Agency's *Glomar* response was therefore proper under FOIA Exemption 3.

## V.     **CONCLUSION**

31.     In conclusion, based upon my position as the Acting Chief of Policy, Information, Performance, and exports, the Agency official responsible for the processing of all requests made pursuant to FOIA, I am confident that the Agency could neither confirm nor deny the existence of intelligence information because either response would reveal information that is both

currently and properly classified in accordance with Executive Order 13526 and is protected from disclosure by the above-referenced statutes.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this _28_ th day of August 2019 pursuant to 28 U.S.C. § 1746.

LINDA M. KIYOSAKI
Acting Chief of Policy, Information,
Performance, and Exports
National Security Agency

16

# EXHIBIT A



NATIONAL SECURITY AGENCY
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case:  105832
6 December 2018

AVI SCHAPIRO
COMMITTEE TO PROTECT JOURNALIST
330 7TH AVE. 11TH FLOOR
NEW YORK, NY 10001

Dear Avi Schapiro:

     This is an initial response to your Freedom of Information Act (FOIA) request of 20 November 2018, which was received by this office on 27 November 2018, for "…records relating to the journalist Jamal Khashoggi.  CPJ seeks the same documents requested by the Knight First Amendment Institute at Columbia University ('Knights Institute') on October 19, 2018. The Knight Institute's request is attached as Exhibit A."

     Your letter has been assigned Case Number 105832.  Please refer to this case number when contacting us about your request.  There will be no processing fees; therefore, we have not addressed your fee category or request for a fee waiver.

     A FOIA request may be expedited if the requester has made a statement certified by the requester to be true and correct to the best of his/her knowledge that a compelling need exists.  Compelling need is defined as follows:

1.     The failure to obtain the records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual.
2.     The information is urgently needed by an individual primarily engaged in disseminating information to inform the public about actual or alleged Federal Government activity.  Urgent need means that the information has a particular value that will be lost if not disseminated quickly.

     A request will also be handled expeditiously, upon receipt of a certified statement by the requester, if the substantial due process rights of the requester would be impaired by the failure to process the request immediately and the information sought is not otherwise available; there is a humanitarian need which will promote the welfare and interest of mankind; or other narrowly construed exceptional circumstances exist.

     Your request for expedited treatment is denied because it does not meet the FOIA's criteria for expedited treatment.  We will process your request in our normal processing queue, and will provide a more substantive response as soon as we are able.

FOIA Case:  105832

Since the denial of expedited treatment may be construed as a partial denial of your request, you are hereby advised of this Agency's appeal procedures.  Any person denied access to information may file an appeal to the NSA/CSS FOIA/PA Appeal Authority.  You may appeal this denial now, or upon receipt of the Agency's final decision pertaining to the entirety of all of the denials within your request.  If you decide to appeal, you should do so in the manner outlined below.

- The appeal must be sent via U.S. postal mail, fax or electronic delivery (e-mail) and addressed to:

      NSA FOIA/PA Appeal Authority (P132)
      National Security Agency
      9800 Savage Road STE 6932
      Fort George G. Meade, MD  20755-6932

      The facsimile number is 443-479-3612.
      The appropriate email address to submit an appeal is
      FOIARSC@nsa.gov.

- It must be postmarked or delivered electronically no later than 90 calendar days from the date of this letter.  Decisions appealed after 90 days will not be addressed.
- Please include the case number provided above.
- Please describe with sufficient detail why you believe this denial was unwarranted.

You may also contact our FOIA Public Liaison at foialo@nsa.gov for any further assistance and to discuss any aspect of your request.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:

      Office of Government Information Services
      National Archives and Records Administration
      8601 Adelphi Rd - OGIS
      College Park, MD  20740
      ogis@nara.gov
      877-684-6448
      (Fax) 202-741-5769

                    Sincerely,

                    Shawn C Lukis

                    JOHN R. CHAPMAN
                    Chief, FOIA/PA Office
                    NSA Initial Denial Authority

EXHIBIT B



NATIONAL SECURITY AGENCY
CENTRAL SECURITY SERVICE
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case: 105522A/105832A
11 March 2019

RAMYA KRISHNAN
ADI KAMDAR
KNIGHT FIRST AMENDMENT INSTITUTE
AT COLUMBIA UNIVERSITY
475 RIVERSIDE DRIVE SUITE 202
NEW YORK, NY 10115

AVI ASHER-SCHAPIRO
COMMITTEE TO PROTECT JOURNALISTS
330 7th AVE, 11th FLOOR
NEW YORK, NY 10001

Dear Ms. Krishnan and Mr. Schapiro:

This letter accompanies NSA's final response to the 19 October 2018 Freedom of Information Act (FOIA) request on behalf of the Knight First Amendment Institute, and the 20 November 2018 FOIA request on behalf of the Committee to Protect Journalists for the following:

1. All procedures or guidance for determining whether to warn, or for delivering a warning to, an intended victim or those responsible for protecting the intended victim, pursuant to Directive 191;

2. All records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, including any records relating to duty to warn actions with respect to him;

3. All records concerning any 'issue aris[ing] among IC elements' regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him.

The request on behalf of the Knight First Amendment Institute was assigned FOIA Case Number 105522, and the request on behalf of the Committee to Protect Journalists was assigned FOIA Case Number 105832. On 20 November 2018, the Knight First Amendment Institute filed a complaint which included NSA, initiating the litigation regarding the above-described FOIA requests. Your cases have been processed in accordance with FOIA.

FOIA Case: 105522A

**Item 1**

Two documents (21 pages) responsive to item 1 are enclosed: (1) *NSA/CSS Policy Instruction 2-0003 (Duty to Warn)* and (2) *Duty to Warn Operating Procedures.*[1] Certain information has been deleted from the enclosures, as explained below.

Some of the information deleted from the documents was found to be currently and properly classified in accordance with Executive Order 13526. This information meets the criteria for classification as set forth in Subparagraph (c) of Section 1.4 and remains classified SECRET as provided in Section 1.2 of the Executive Order. The information is classified because its disclosure could reasonably be expected to cause serious damage to the national security. Because the information is currently and properly classified, it is exempt from disclosure pursuant to the first exemption of the FOIA (5 U.S.C. § 552(b)(1)).

In addition, this Agency is authorized by various statutes to protect certain information concerning its activities. We have determined that such information exists in these documents Accordingly, those portions are exempt from disclosure pursuant to the third exemption of the FOIA (5 U.S.C. § 552(b)(3)), which provides for the withholding of information specifically protected from disclosure by statute. The statute applicable in this case is Section 6, Public Law 86-36 (50 U.S.C. § 3605).

**Items 2 and 3**

Regarding items 2 and 3 of your requests, we have determined that the fact of the existence or non-existence of the materials you request is a currently and properly classified matter in accordance with Executive Order 13526, as set forth in Subparagraph (c) of Section 1.4. Thus, we can neither confirm nor deny the existence of responsive records, pursuant to the first exemption of the FOIA (5 U.S.C. § 552(b)(1)), which provides that the FOIA does not apply to matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign relations and are, in fact, properly classified pursuant to such Executive Order.

In addition, this Agency is authorized by various statutes to protect certain information concerning its activities. The third exemption of the FOIA provides for the withholding of information specifically protected from disclosure by statute. Thus, the existence or non-existence of the information is also exempted from disclosure pursuant to the third exemption. The specific statutes applicable in this case are 18 U.S.C § 798; 50 U.S.C § 3024(i); and Section 6, Public Law 86-36 (50 U.S.C. § 3605).

NSA collects and provides intelligence derived from foreign communications to policymakers, military commanders, and law enforcement officials. We do this to help these individuals protect the security of the United States, its allies, and their citizens from threats such as terrorism, weapons of mass destruction, foreign espionage, international organized crime, and other hostile activities. What we are authorized to do, and how we do it, is described in Executive Order 12333. Information about how

---

[1] Please note that the policy instruction cited in *Duty to Warn Operating Procedures, NSA/CSS Policy Instruction 11-0002 (Duty to Warn),* is an unpublished version of 2-0003. 11-0002 was the numbering given to 2-0003 prior to publication.

FOIA Case: 105522A

NSA conducts signals intelligence activities is available on the websites of NSA
(www.nsa.gov) and the Office of the Director of National Intelligence (www.dni.gov).

Please be advised that NSA has completed its processing of your cases.

Sincerely,

JOHN R. CHAPMAN
Chief, FOIA/PA Office
NSA Initial Denial Authority

Encls:
  a/s