IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KNIGHT FIRST AMENDMENT INSTITUTE
AT COLUMBIA UNIVERSITY, et al.,

        Plaintiff,

    v.

CENTRAL INTELLIGENCE AGENCY, et
al.

        Defendants.

Case No. 18-cv-2709

### DECLARATION OF ANTOINETTE B. SHINER, INFORMATION REVIEW OFFICER FOR THE LITIGATION INFORMATION REVIEW OFFICE CENTRAL INTELLIGENCE AGENCY

I, ANTOINETTE B. SHINER, hereby declare and state:

## I.   INTRODUCTION

1.   I currently serve as the Information Review Officer ("IRO") for the Litigation Information Review Office ("LIRO") at the Central Intelligence Agency ("CIA" or "Agency"). I have held this position since 19 January 2016 and have worked in the information review and release field since 2000.

2.   I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010).  This means that I am authorized to assess the current, proper classification of CIA information, up to and including TOP SECRET information,

1

based on the classification criteria of Executive Order 13526 and applicable regulations.

3.    Among other things, I am responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

4.    Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA request.  I make the following statements based upon my personal knowledge and information made available to me in my official capacity.  I am submitting this declaration and the accompanying Vaughn index, attached as Exhibit A, in support of the Motion for Summary Judgment to be filed by the United States Department of Justice in this proceeding.

II.    **BACKGROUND**

5.    This matter concerns identical FOIA requests from Knight First Amendment Institute ("Knight Institute") and the Committee to Protect Journalists ("CPJ") to CIA. By letter dated 19 October 2018, the Knight Institute sought expedited processing for the following records:

  (1)    All procedures or guidance for determining
        whether to warn, or for delivering a warning to, an

2

intended victim or those responsible for protecting the intended victim, pursuant to Directive 191[1];

(2)     All records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, including any records relating to duty to warn actions taken with respect to him;[2]

(3)     All records concerning any "issue aris[ing] among IC elements" regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him.

6.     By letter dated 26 October 2018, the CIA acknowledged receipt of the Knight Institute's FOIA request, assigned it the reference number F-2019-00158, and denied Plaintiff's request for expedited processing. The letter advised the Plaintiff of their right to appeal this determination.

---

[1] Intelligence Community Directive 191 ("ICD 191") is entitled "Duty to Warn" and establishes "a consistent, coordinated approach for how the Intelligence Community (IC) will provide warning regarding threats to specific individuals or groups of intentional killing, serious bodily injury, and kidnapping." Under subsection (F) of ICD 191, IC elements are required to establish internal procedures for making duty to warn determinations and delivering warnings in a timely manner.
[2] Plaintiffs' included the following footnote: "'Duty to warn actions' include but are not limited to senior officer reviews of threat information and determinations; justifications not to warn the intended victim based on waiver criteria; coordination with other IC elements (such as the Federal Bureau of Investigation) to determine how best to pass threat information to the intended victim; and communication of threat information to another IC element or U.S. government agency for delivery to the intended victim."

3

7.   By letter dated 2 November 2018, the Knight Institute appealed the CIA's denial of expedited processing.

8.   On 20 November 2018, the Knight Institute filed a complaint in this Court naming CIA as a defendant.

9.   By letter received 21 November 2018, CPJ submitted an identical FOIA request to CIA seeking expedited processing. A true and correct copy of these letters are attached as Exhibit "A".

10.   By letter dated 28 November 2018, the CIA acknowledged receipt of CPJ's FOIA request, assigned it the reference number F-2019-00522, and denied Plaintiff's request for expedited processing. The letter advised the Plaintiff of their right to appeal this determination. A true and correct copy of these letters are attached as Exhibit "B".

11.   On 17 January 2019, the Knight Institute filed an unopposed motion to amend the complaint to add plaintiff CPJ.

12.   CIA identified and searched all CIA components that were likely to possess records responsive to Part 1 of plaintiff's FOIA request and used search methods that were reasonably likely to identify all responsive CIA records. In addition, CIA processed a CIA-originated document that was located by the Office of the Director of National Intelligence ("ODNI") in the course of its search related to part 1 of this same request, and referred by ODNI to CIA for processing.

4

13.  By letter dated 15 March 2019, the CIA made a final
production responsive to part 1 of the Plaintiffs' FOIA Request.[3]
Three documents were released in part and two documents were
withheld in full. Redactions and withholdings were both made
pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(5), and (b)(6).
CIA asserted a "Glomar" response as to parts 2 and 3. A true and
correct copy of these letters are attached as Exhibit "C".

14.  During the Department of State's ("State") review of
responsive records in connection with this case, State
identified two documents, both of which were responsive to part
one of the Plaintiffs' FOIA request, containing information that
was thought to belong to CIA.  In accordance with the
requirements of Section 3.6(b) of Executive Order 13526, State
referred review of these documents to CIA, for direct response
to the Plaintiffs, via letter dated 27 March 2019.

15.  By letter dated 29 March 2019, CIA withheld both
documents referred by State in full pursuant to FOIA Exemptions
(b)(1), (b)(3), (b)(5), and (b)(6). A true and correct copy of
this letter is attached as Exhibit "D".

---

[3] CIA's March 15, 2019 letter was inadvertently addressed only to the Knight
Institute, but I understand that a copy of this letter and the accompanying
production were provided via email to both the Knight Institute and CPJ on
this date. On March 18, 2019, CIA issued a second letter, and accompanying
production, addressed to CPJ but otherwise identical to the first, in order
to correct the administrative oversight. A true and correct copy of both
letters is attached as Exhibit A.

16.   I understand that on July 18, 2019, former plaintiff Knight Institute voluntarily dismissed its claims, without prejudice to seeking fees at a later point in the proceedings. Accordingly, this declaration addresses only CIA's response to remaining plaintiff CPJ.

## III. APPLICABLE FOIA EXEMPTIONS

### A. Exemption (b)(1)

17.   Exemption (b)(1) provides that the FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here, the Exemption (b)(1) withholdings in the documents at issue satisfy the procedural and the substantive requirements of Executive Order 13526, which governs classification. *See* E.O. 13526 § 1.1(a), § 1.4(c).

18.   As an original classification authority, I have determined that the information at issue in this case is currently and properly classified, and appropriately withheld from disclosure. Additionally, this information is owned by, and is under the control of, the U.S. Government. As described below, the information falls under classification category

6

§ 1.4(c) of the Executive Order because it concerns "intelligence activities (including covert action), [or] intelligence sources or methods." Further, its unauthorized disclosure could reasonably be expected to result in damage to national security. None of the information at issue has been classified in order to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization, or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security. Further, the classified information is properly marked in accordance with § 1.6 of the Executive Order.

19. More specifically, the classified information at issue consists of details about foreign liaison and intelligence sources and methods. To the greatest extent possible, I have attempted to explain on the public record the nature of the information subject to Exemption (b)(1). As described below, disclosure of these details, which would reveal intelligence sought by the Agency and the means by which it is acquired, could reasonably be expected to cause harm, and in some instances serious damage, to the CIA's continued ability to collect this information and to the Agency's relationships with foreign partners, thereby damaging the national security.

7

20.  *Intelligence Methods*.  The withholdings made on the basis of Exemption (b)(1) contain details with respect to the Agency's duty to warn policies and procedures that would disclose other intelligence methods of the CIA. Intelligence methods are the means by which the CIA accomplishes its mission. Intelligence methods are highly sensitive because their disclosure could provide adversaries with valuable insight into CIA operations that could impair the effectiveness of CIA's intelligence collection.

21.  Here, revealing aspects of what types of information or threats the Agency deems sufficient to qualify as "credible and specific," so as to trigger the duty to warn; internal processes related to how the Agency conducts the appropriate analysis of this question; and how warnings are, in certain instances, conveyed to the intended victim, would disclose details about the practice of intelligence gathering and specific aspects of Agency tradecraft.  These details would reveal what type of information the Agency considers in its analysis regarding the duty to warn, which could be utilized by adversaries.  For example, adversaries could use the CIA's internal policies and policy related deliberations as a means to detect and/or counteract the Agency's intelligence methods – which could have grave consequences for the security of

8

individuals facing a threat to their life and safety in the context of the duty to warn.

22.   Document 1 also contains details regarding the locations of covert CIA installations located abroad.   The places where the CIA maintains a presence constitute intelligence methods of the Agency.   Official acknowledgment that the CIA has or had a facility in a particular location abroad could cause the government of the country in which the installation is or was located to take countermeasures, either on its own initiative or in response to public pressure, to eliminate the CIA's presence within its borders or curtail cooperation with the CIA.   Damage to those relationships with foreign governments could harm the CIA's continued ability to obtain accurate and timely foreign intelligence, and could result in terrorists and foreign intelligence services targeting that installation and the persons associated with it, placing CIA employees and sources at great risk, and harming the Agency's ability to protect personnel.

23.   In sum, I have determined that information withheld pursuant to Exemption (b)(1) has been properly withheld because it is currently and properly classified and its disclosure could identify CIA methods and activities.

**B.    Exemption (b)(3)**

9

24.   Exemption (b)(3) protects information that is specifically exempted from disclosure by statute. To justify withholding under Exemption (b)(3), a statute must either (i) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establish particular criteria for withholding or refer to particular types of matters to be withheld.  5 U.S.C. § 552(b)(3).

25.   Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 (the "CIA Act"), provides that the CIA shall be exempted from the provisions of "any other law" (in this case, FOIA) which requires the publication or disclosure of, the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.  Accordingly, under Section 6, the CIA is exempt from disclosing information relating to employees' names and personal identifiers.  The CIA Act therefore constitutes a federal statute that "establish[es] particular criteria for withholding or refer[s] to particular types of matters to be withheld" and is well-established as a qualifying withholding statute under Exemption (b)(3). 5 U.S.C. § 552(b)(3). Each of the documents contains information concerning the organization, numbers, names, or official titles of personnel employed by the CIA, the disclosure of which the CIA Act expressly prohibits.

26.   Additionally, Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024 (the "National Security Act"), which provides that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure," applies to certain responsive records.   Accordingly, the National Security Act constitutes a federal statute which "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue."   5 U.S.C. § 552(b)(3).   Under the direction of the DNI pursuant to section 102A of the National Security Act, as amended, and section 1.6(d) of Executive Order 12333,[4] the Director of the CIA is responsible for protecting CIA intelligence sources and methods from unauthorized disclosure. 50 U.S.C. § 3024(i)(1). Accordingly, the CIA relies on the National Security Act to withhold information that would reveal intelligence sources and methods and their application by Agency personnel. I further note that the vast majority of information withheld pursuant to the National Security Act is also protected by Exemption (b)(1) for the reasons set forth above.   To the extent that the information covered by the statute is not

---

[4] Section 1.6(d) of Executive Order 12333, as amended by Executive Order 13470 (July 30, 2008) requires the Director of the Central Intelligence Agency to "[p]rotect intelligence and intelligence sources, methods, and activities from unauthorized disclosure . . . ."

classified, it nevertheless would reveal protected intelligence sources and methods related to the Agency's duty to warn policy.

27.   Although neither the CIA Act nor the National Security Act requires the CIA to identify or describe the damage to national security that reasonably could be expected to result from the unauthorized disclosure of information covered by the statutes, the release of this information is reasonably likely to significantly impair the CIA's ability to carry out its core mission of gathering and analyzing intelligence.

**C.   Exemption (b)(5)**

28.   Exemption (b)(5) protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This has been construed to exempt documents that are normally protected in the civil discovery context. Documents in this case were withheld pursuant to both the deliberative process privilege and the attorney-client privilege, which are recognized as protected by Exemption (b)(5).

29.   *Attorney-Client Privilege.* The attorney-client privilege protects confidential communications between an attorney and his or her client relating to a legal matter for which the client has sought professional advice.  In this case, the attorney-client privilege applies to Document 4, which is an

12

outline drafted by an attorney for the purpose of briefing Agency clients on legal considerations related to the duty to warn. It contains legal advice from an Agency attorney solicited by internal CIA clients on this topic and the confidentiality of these communications has been maintained.

30.   If this confidential information – and other confidential information of this nature – were to be disclosed, it would inhibit open communication between CIA personnel and their attorneys, thereby depriving the Agency of full and frank legal counsel. The deliberative process was also asserted for this document insofar as this legal advice is used to inform decisions made by Agency officers with respect to the duty to warn process.

31.   *Deliberative Process Privilege.* The deliberative process privilege protects Agency communications that are pre-decisional and deliberative.   The purpose of the privilege is to prevent injury to the quality of agency decision making.  Here, the CIA invoked the deliberative process privilege to protect the internal communications and inter-agency communications described broadly below and in the attached Vaughn index for documents 1, 3, and 4.

32.   *Internal Memoranda.* Documents 3 and 4 are informal internal outlines consisting of comments, recommendations, operational proposals, and assessments on aspects of the duty to

13

warn as it relates to internal policy guidance. These records document internal recommendations and comments which feed into guidance regarding the duty to warn.

33.   *Inter-Agency Email.* Document 1 in the <u>Vaughn</u> index is an inter-agency email chain providing various considerations and suggestions in response to a specific inquiry regarding the Agency's policies and procedures related to the duty to warn. The deliberative process privilege was applied to protect this email chain in full because it contains interim discussions and considerations that feed into a larger decision making process concerning the implementation of certain policies and procedures related to the duty to warn.

34.   I have examined the documents withheld pursuant to the deliberative process privilege and have determined that, to the extent there is any factual material, it is part and parcel of the deliberations and cannot be segregated.  To the extent that these documents contain factual information, these details would tend to reveal the nature of the preliminary recommendations and opinions preceding final determinations.

35.   Thus, the disclosure of these documents would have the foreseeable harm of significantly hampering the ability of Agency personnel to candidly discuss and assess the viability of certain courses of action, and ultimately chilling deliberations.  Additionally, revealing this information could

14

mislead or confuse the public by disclosing rationales that were

not the basis for the Agency's final decisions.  Moreover, I

note that Exemptions (b)(1) and (b)(3) also apply to all of the

information for which Exemption (b)(5) was asserted.

### D. Exemption (b)(6)

36.  I have also determined that certain information must

be withheld pursuant to FOIA Exemption (b)(6).  5 U.S.C.

§ 552(b)(6) exempts from disclosure:

> personnel and medical files and similar files when the
> disclosure of such information would constitute a
> clearly unwarranted invasion of personal privacy.

37.  Therefore, in addition to withholding the names of CIA

officers pursuant to the CIA Act, the CIA has also asserted

Exemption (b)(6) to withhold names and personally identifying

details of CIA personnel contained in Document 1. The persons

mentioned in this document maintain a strong privacy interest in

this information.  Revealing the individuals could subject them

to harassment or unwanted contact by the media, particularly

given the high profile subject matter of this case.

38.  Conversely, plaintiff has not set forth and, I am

unable to identify, any qualifying public interest that would be

served by such a disclosure.  The release of the identities of

these individuals would not serve the core purpose of the FOIA -

- informing the public about the operations or activities of the

government.  Accordingly, because there is no qualifying public interest in disclosure, I have determined that the release of this information would constitute a clearly unwarranted invasion of these individuals' personal privacy.

## IV.  **SEGREGABILITY**

39.  In evaluating the responsive documents, the CIA conducted a document-by-document and line-by-line review and released all reasonably segregable non-exempt information.  In instances where no segregable, non-exempt portions of documents could be released without potentially compromising classified or privileged information or other information protected under the FOIA, then such documents were withheld from Plaintiffs in full. In this case, much of the withheld information is protected by several, overlapping FOIA exemptions.  After reviewing all of the records at issue, I have determined that no additional information can be released without jeopardizing classified or privileged material, individuals' personal privacy, and/or other protected information that falls within the scope of one or more FOIA exemptions.

40.  Therefore, for the reasons set forth above, the documents are redacted in part or withheld in full pursuant to Exemptions (b)(1), (b)(3),(b)(5), and (b)(6).

## V.   **CIA'S GLOMAR RESPONSE TO PARTS 2 AND 3 OF THE REQUEST**

41.   As explained below, acknowledging the existence or non-existence of records responsive to the portion of Plaintiffs' request that concerns the Agency's or the Intelligence Community's duty to warn as it relates to Jamal Khashoggi would reveal a classified and/or statutorily-protected fact within the meaning of FOIA Exemptions 1 and 3, as described above. This response is commonly referred to as the Glomar response.[5]

42.   As described above, Exemption 1 provides that FOIA does not require the production of records that are:   "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order."   5 U.S.C. § 552(b)(1). Section 1.1(a) sets forth the procedural standards for classification, which have been satisfied in this case. Section 3.6(a) provides that "[a]n agency may refuse to confirm or deny the existence or non-existence of requested records whenever the fact of their existence or non-existence is itself classified under this order or its predecessors." Additionally, Section 102A(i)(1) of the National Security Act in conjunction

---

[5] The origins of the Glomar response date back to the D.C. Circuit's decision in Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976), which affirmed the CIA's use of the "neither confirm nor deny" response to a FOIA request for records concerning the CIA's reported contacts with the media regarding Howard Hughes' ship the Hughes' Glomar Explorer.

with Exemption (b)(3) protects unauthorized disclosure of
intelligence sources and methods. Consistent with sections
1.1(a) and 3.6(a) of Executive Order 13526, and as described
below, I have determined that the fact of the existence or non-
existence of the requested records is currently and properly
classified and pertains to "intelligence activities (including
covert action), [or] intelligence sources or methods" within the
meaning of section 1.4(c) of the Executive Order.

43.  As described above, the Agency has conducted a search
for records that contain general information about the Agency's
duty to warn pursuant to Intelligence Community Directive 191
and provided the requester with all segregable, non-exempt
information contained in those records.  The fact that Agency
maintains records responsive to part one of the request is not
itself a classified fact.  However, revealing the existence or
non-existence of records responsive to parts two and three of
the request would reveal a classified fact – namely, whether the
duty to warn was implicated in connection with Jamal Khashoggi.

44.  For example, if the Agency were to disclose that
responsive records to parts two and three of Plaintiffs' request
existed – it would reveal aspects of the CIA's or the
Intelligence Community's intelligence collection.  The existence
of responsive records would indicate that the CIA or other
elements of the Intelligence Community possessed threat

information in advance of Khashoggi's death.  This fact, in turn, would tend to reveal, at a minimum, targets of intelligence collection at a given point in time and could also reveal sources, capabilities, resources, and/or relationships with domestic or foreign entities.  Conversely, disclosing that the Agency had no records on the subject would tend to reveal a blind spot in the U.S. Government's intelligence acquisition. The presence or absence of records on this subject would be of great interest to adversaries - who could attempt to hinder or circumvent intelligence collection efforts and exploit blind spots.

45.  Terrorist organizations, foreign intelligence services, and other hostile groups continually gather details regarding the CIA's specific intelligence capabilities, authorities, and interests; and attempt to use this information to their advantage.  In order to effectively collect and analyze foreign intelligence, the Agency must avoid disclosing the subjects of intelligence interest and what is known at a given point in time.  Accordingly, confirming or denying the existence or non-existence of the records related to parts two and three in this case could reasonably be expected to cause damage to national security because such an admission would reveal broader intelligence priorities and capabilities of the Agency and

sensitive details about the CIA's intelligence methods and
activities.

46.   Additionally, I find this classified fact is also
protected by Exemption (b)(3) and the National Security Act.
Acknowledging the existence or non-existence of records
reflecting a classified connection to the CIA in this matter
would reveal information that concerns intelligence sources and
methods, which the National Security Act is designed to protect.
In contrast to Exemption (b)(1), this statute does not require
the CIA to identify and describe the damage to the national
security that reasonably could be expected to result should the
CIA confirm or deny the existence or non-existence of the
records.   Nonetheless, I refer the Court to the paragraphs above
for a description of the damage to the national security that is
reasonably likely to ensue should anything other than a Glomar
response be required of the CIA in response to parts 2 and 3 of
the Plaintiff's FOIA request.   FOIA Exemptions (b)(1) and (b)(3)
thus apply independently and co-extensively.

47.   Finally, I have reviewed the First Amended Complaint
and Plaintiff's characterizations of news reporting represented
in the First Amended Complaint, and I nonetheless maintain my
assessment regarding the serious harm to national security that
would result if CIA confirmed the existence or non-existence of
records responsive to Parts 2 and 3 of plaintiff's request. CIA

20

has made no official acknowledgement regarding the duty to warn
as it relates to Jamal Khashoggi, therefore, the Glomar is
proper.

48.   Accordingly, a Glomar response to parts 2 and 3 of
plaintiff's FOIA request is appropriate because the existence or
non-existence of CIA records responsive to these requests is a
currently and properly classified fact, the disclosure of which
could be expected to cause serious damage to national security.

\*      \*      \*

I hereby declare under penalty of perjury that the
foregoing is true and correct.

Executed this 28th day of August 2019.


Antoinette B. Shiner
Information Review Officer
Litigation Information Review Office
Central Intelligence Agency

# Exhibit A
# Vaughn

**Knights First Amendment at Columbia University vs. CIA, et al., 18-cv-2709**

**Central Intelligence Agency *Vaughn* Index**

| Entry No. | CADRE No. | Description of Document and Information Withheld | Date of Doc. | Disposition | No. of Pages | Exemptions Cited |
|---|---|---|---|---|---|---|
| 1 | C06796068 | Inter-Agency Email – Referral from Department of State. Exemptions (b)(1) and Exemptions (b)(3) (National Security Act) were asserted to protect classified intelligence methods, controlled access and dissemination control markings, and locations of Agency stations or bases. Exemption (b)(3) (CIA Act) was asserted to protect employee identification numbers, titles, names, and organization information of Agency personnel. Exemption (b)(5) was asserted to protect pre-decisional inter-agency deliberations regarding the agency's duty to warn policies. Exemption (b)(6) protects information that would constitute a clearly unwarranted invasion of personal privacy of the individuals involved. | 8/21/2018 | DENIED IN FULL (DIF) | 5 | (b)(1), (b)(3) CIAAct, (b)(3) NatSecAct, (b)(5), (b)(6) |
| 2 | C06796082 | Threat Assessment Paper – Referral from Department of State. Exemption (b)(1) and Exemption (b)(3) (National Security Act) were asserted to protect classified intelligence methods, controlled access and dissemination control markings, and information pertaining to foreign relations or foreign activities of the United States. Exemption (b)(3) CIA Act was also asserted to protect employee identification numbers, titles, names, and organization information of Agency personnel. | Undated | DIF | 1 | (b)(1), (b)(3) CIAAct, (b)(3) NatSecAct |

**Knights First Amendment at Columbia University vs. CIA, et al., 18-cv-2709**
**Central Intelligence Agency *Vaughn* Index**

| Entry No. | CADRE No. | Description of Document and Information Withheld | Date of Doc. | Disposition | No. of Pages | Exemptions Cited |
|---|---|---|---|---|---|---|
| 3 | C06790103 | Internal memorandum Exemption (b)(1) and Exemption (b)(3) (National Security Act) were asserted to protect classified intelligence methods and controlled access and dissemination control markings. Exemption (b)(3) (CIA Act) was asserted to protect employee titles and organization information of Agency personnel. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations regarding duty to warn policies and guidance. | Undated | DIF | 4 | (b)(1), (b)(3) CIAAct, (b)(3) NatSecAct, (b)(5) |
| 4 | C06790104 | Internal Memorandum Exemption (b)(1) and Exemption (b)(3) (National Security Act) were asserted to protect classified intelligence methods and sources, locations of Agency stations or bases, and controlled access and dissemination control markings; as well as information pertaining to foreign relations or foreign activities of the United States. Exemption (b)(3) (CIA Act) was asserted to protect employee identification numbers, titles, names, and organization information of Agency personnel. Exemption (b)(5) was asserted to protect pre-decisional intra-agency deliberations and attorney-client protected information. | Undated | DIF | 4 | (b)(1), (b)(3) CIAAct, (b)(3) NatSecAct, (b)(5) |

**Knights First Amendment at Columbia University vs. CIA, et al., 18-cv-2709**

**Central Intelligence Agency *Vaughn* Index**

| Entry No. | CADRE No. | Description of Document and Information Withheld | Date of Doc. | Disposition | No. of Pages | Exemptions Cited |
|---|---|---|---|---|---|---|
| 5 | C06788114 | Agency Regulation Concerning the Duty to Warn<br><br>Exemption (b)(1) and Exemption (b)(3) (National Security Act) were asserted to protect classified intelligence methods, and controlled access and dissemination control markings. Exemption (b)(3) (CIA Act) was asserted to protect employee identification numbers, titles, names, and organization information of Agency personnel. | 11/4/2016 | RELEASED IN PART (RIP) | 6 | (b)(1), (b)(3) CIAAct, (b)(3) NatSecAct |
| 6 | C06788115 | Duty to Warn Guidance<br><br>Exemption (b)(1) and Exemption (b)(3) (National Security Act) were asserted to protect classified intelligence methods, internal database links, information on storage of the document, references to other classified documents, and controlled access and dissemination control markings. Exemption (b)(3) (CIA Act) was asserted to protect employee identification numbers, titles, names, and organization information of Agency personnel. | Undated | RIP | 8 | (b)(1), (b)(3) NatSecAct |
| 7 | C06794097 | Duty to Warn Guidance<br><br>Exemption (b)(1) and Exemption (b)(3) (National Security Act) were asserted to protect classified intelligence methods, internal database links, references to other classified documents, and controlled access and dissemination control markings. Exemption (b)(3) (CIA Act) was asserted to protect employee identification numbers, titles, names, and organization information of Agency personnel. | 3/14/2019 | RIP | 5 | (b)(1), (b)(3) CIAAct, (b)(3) NatSecAct |

# Exhibit A

# Letter

UNCLASSIFIED

F-2019-00522



Committee to Protect Journalists

CHAIR
Kathleen Carroll

VICE CHAIR
Jacob Weisberg

HONORARY CHAIR
Terry Anderson

EXECUTIVE DIRECTOR
Joel Simon

DIRECTORS
Stephen J. Adler REUTERS
Franz Allina
Amanda Bennett
Krishna Bharat
Susan Chira THE NEW YORK TIMES
Anne Garrels
Cheryl Gould
Jonathan Klein GETTY IMAGES
Jane Kramer THE NEW YORKER
Mhamed Krichen AL-JAZEERA
Isaac Lee EXILE CONTENT STUDIO
Rebecca MacKinnon
Kati Marton
Michael Massing
Geraldine Fabrikant Metz
THE NEW YORK TIMES
Victor Navasky THE NATION
Clarence Page CHICAGO TRIBUNE
Lydia Polgreen HUFFPOST
Ahmed Rashid
David Remnick THE NEW YORKER
Alan Rusbridger
LADY MARGARET HALL, OXFORD
Karen Amanda Toulon BLOOMBERG NEWS
Darren Walker FORD FOUNDATION
Roger Widmann
Jon Williams RTÉ NEWS

To Whom It May Concern:

The Committee to Protect Journalists ("CPJ") submits this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records relating to the journalist Jamal Khashoggi. CPJ seeks the same documents requested by the Knight First Amendment Institute at Columbia University ("Knight Institute") on October 19, 2018. The Knight Institute's request is attached as Exhibit A.

CPJ requests expedited processing for the same reasons laid out in the Knight Institute's request.

CPJ requests a waiver of document search, review, and duplication fees on the grounds that (a) disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester," 5 U.S.C. § 552(a)(4)(A)(iii), and (b) CPJ is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use, 5 U.S.C. § 552(a)(4)(A)(ii)(II).

330 7th Avenue, 11th Floor
New York, NY 10001 USA
PHONE: +1 (212) 465-1004
FAX: +1 (212) 465-9568
info@cpj.org

www.cpj.org

UNCLASSIFIED

Exhibit A

# KNIGHT
# FIRST AMENDMENT
# INSTITUTE

at Columbia University

**RAMYA KRISHNAN**
Staff Attorney

October 19, 2018

Information and Privacy Coordinator
Central Intelligence Agency
Washington, DC 20505

**Re:     Freedom of Information Act Request**
**Expedited Processing Requested**

To whom it may concern,

The Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute")[1] submits this request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records relating to the journalist Jamal Khashoggi.

## I. Background

When an Intelligence Community ("IC") element acquires information indicating an impending threat of intentional killing, serious bodily injury, or kidnapping directed at a person, Intelligence Community Directive 191 ("Directive 191") requires the element to "warn the intended victim or those responsible for protecting the intended victim, as appropriate."[2] Directive 191 further obligates IC elements to "document and maintain records" on any actions taken pursuant to that duty. Directive 191, § 13.

Jamal Khashoggi, a columnist for the *Washington Post*, is believed to have been killed after entering a Saudi consulate in Istanbul on October 2, 2018.[3] The *Washington Post* reports that, before his disappearance, U.S. intelligence agencies intercepted communications of Saudi officials discussing a plan to

---

[1] The Knight First Amendment Institute is a New York not-for-profit organization based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education.

[2] Director of National Intelligence, Intelligence Community Directive 191 § E.1 (July 21, 2015), https://perma.cc/49P8-J69X.

[3] *Jamal Khashoggi: Saudi Journalist Vanishes in Istanbul*, BBC News (Oct. 4, 2018), https://perma.cc/VD23-B3NX; David D. Kirkpatrick & Carlotta Gall, *Audio Offers Gruesome Details of Jamal Khashoggi Killing, Turkish Official Says*, N.Y. Times (Oct. 17, 2018), https://perma.cc/8RGV-7CVE.

475 Riverside Drive, Suite 302, New York, NY 10115  |  (646) 745-8500  |  ramya.krishnan@knightcolumbia.org

capture Khashoggi.[4] It is not publicly known, however, whether the U.S. government warned Khashoggi of that threat. The Knight Institute seeks to inform the public about the U.S. government's compliance, or failure to comply, with its duty to warn Khashoggi of any known and impending threats to his safety.

## II. Records requested

The Knight Institute seeks the following records:

1. All procedures or guidance for determining whether to warn, or for delivering a warning to, an intended victim or those responsible for protecting the intended victim, pursuant to Directive 191;

2. All records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, including any records relating to duty to warn actions taken with respect to him;[5]

3. All records concerning any "issue aris[ing] among IC elements" regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him. *See* Directive 191, § G.1.

Where a document contains information that falls into one or more of the categories described above, we seek the entirety of that document. If processing the entirety of a given document would be unusually burdensome, we ask that you give us an opportunity to narrow our request. Please disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b).

## III. Application for Expedited Processing

The Knight Institute requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). Obtaining, analyzing, and publicly disseminating information

---

[4] Loveday Morris, Souad Mekhennet & Kareem Fahim, *Saudis Are Said To Have Lain in Wait for Jamal Khashoggi*, Wash. Post (Oct. 9, 2018), https://perma.cc/82WY-EUJT.

[5] "Duty to warn actions" include but are not limited to senior officer reviews of threat information and determinations; justifications not to warn the intended victim based on waiver criteria; coordination with other IC elements (such as the Federal Bureau of Investigation) to determine how best to pass threat information to the intended victim; and communication of threat information to another IC element or U.S. government agency for delivery to the intended victim. *See* Directive 191, § F.13.

2

about government activity are among the Institute's core activities.[6] Furthermore, the requested records are urgently needed to inform the public about actual or alleged government activity. The disappearance of Jamal Khashoggi is the subject of national attention. Last week, a bipartisan group of 22 senators sent a letter to President Donald Trump expressing concern about the incident and requesting that the President make a determination on the imposition of sanctions on the responsible party within 120 days.[7]

## IV. Application for Waiver or Limitation of Fees

The Knight Institute requests a waiver of document search, review, and duplication fees on three grounds. First, the disclosure of the requested records is in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Second, the Institute is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). Third, the Institute qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

*      *      *

Thank you for your attention to our request.

Sincerely,

/s/ Ramya Krishnan

Ramya Krishnan
Adi Kamdar
Knight First Amendment Institute at
    Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
ramya.krishnan@knightcolumbia.org
(646) 745-8500

---

[6] About the Knight Institute, https://perma.cc/S9PN-J4ZY.

[7] Press Release, Sen. Bob Corker, *Corker, Menendez, Graham, Leahy Letter Triggers Global Magnitsky Investigation into Disappearance of Jamal Khashoggi* (Oct. 10, 2018).

3

Align top of FedEx Express® shipping label here.

ORIGIN ID:TSSA  (831) 334-5688
AVI ASHER
COMMITEE TO PROTECT JOURNALISTS
330 7TH AVE FL 11
NEW YORK, NY 10001
UNITED STATES US

SHIP DATE: 20NOV18
ACTWGT: 0.20 LB
CAD: 6992734/SSF0I822

BILL THIRD PARTY

TO **INFORMATION & PRIVACY COORDINATOR**
**CENTRAL INTELLIGENCE AGENCY**

**WASHINGTON DC 20505**

(000) 000-0000          REF:
INV:
PO:                            DEPT:



**FedEx**
Express

REF#
3786346

TRK#
0201   7838 7910 9332

WED – 21 NOV 10:30A
PRIORITY OVERNIGHT

**EP PIZA**

20505
DC-US    IAD

INSPECTED
NOV 21 REC'D

# Exhibit B

Central Intelligence Agency



Washington, D.C. 20505

28 November 2018

Ms. Kathleen Carroll
Committee to Protect Journalists
330 7th Avenue, 11th floor
New York, NY 10001

Reference: F-2019-00522

Dear Ms. Carroll:

On 21 November 2018 the office of the Information and Privacy Coordinator received your undated Freedom of Information Act (FOIA), request, submitted on behalf of the Committee to Protect Journalists, for **the same documents requested by Knight First Amendment Institute on 19 October 2018 relating to the journalist, Jamal Khashoggi. You included a copy of their request, which included the following items:**

1) **All procedures or guidance for determining whether to warn, or delivering a warning to, an intended victim or those responsible for protecting the intended victim, pursuant to Directive 191;**
2) **All records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, including any records relating to duty to warn actions taken with respect to him;**
3) **All records concerning any "issue aris[ing] among IC elements" regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him.** *See* **Directive 191. §G.1.**

You have requested expedited processing. Generally, we handle all requests in the order we receive them; that is "first-in, first out." We make exceptions to this rule when a requester establishes a compelling need in accordance with our regulations. We have reviewed your request and determined it does not meet the criteria for expedited processing. Specifically, the request neither involves an imminent threat to the life or physical safety of an individual, nor is it made "by a person primarily engaged in disseminating information, and the information is relevant to a subject of public urgency concerning an actual or alleged or Federal activity." Therefore, we have determined that you have not established a "compelling need" for the information as set forth in 32 CFR § 1900.34. Your request for expedited processing is hereby denied. You may appeal this decision, in my care, within 90 days from the date of this letter. Should you choose to appeal the denial of your request for expedited processing, you are encouraged to provide an explanation supporting your appeal.

Our officers will review your request and will advise you should they encounter any problems or if they cannot begin the search without additional information. We have assigned your request the reference number above. Please use this number when corresponding so that we can identify it easily. In accordance with our regulations, as a matter of administrative discretion, the Agency has waived the fees for this request.

Sincerely,

Allison Fong
Information and Privacy Coordinator

# Exhibit C

Central Intelligence Agency



Washington. D.C. 20505

15 March 2019

Jameel Jaffer
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive
Suite 302
New York, NY 10115

Re: F-2019-00158; 18-cv-02709

Dear Mr. Jaffer:

This letter is in response to the 19 October 2018 Freedom of Information Act (FOIA) request submitted by Ramya Krishnan, also representing Knight First Amendment Institute, for the following:

1) All procedures or guidance for determining whether to warn, or for delivering a warning to, an intended victim or those responsible for protecting the intended victim, pursuant to Directive 191;
2) All records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, including any records relating to duty to warn actions taken with respect to him;
3) All records concerning any "issue aris[ing] among IC elements" regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him. *See* Directive 191. §G.1.

We processed the request in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 3141, as amended.

With regard to item 1, we completed a thorough search for records responsive to the request and determined that three (3) documents can be released in segregable form with redactions made on the basis of FOIA exemptions (b)(1) and (b)(3). In addition, it has been determined that the remaining records must be denied in their entirety on the basis of FOIA exemptions (b)(1), (b)(3), and (b)(5). Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507 and/or Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1).

With regard to items 2 and 3, in accordance with section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request. The fact of the existence or nonexistence of such records is itself currently and properly classified and relates to CIA intelligence sources and methods information that is protected from disclosure by Section 6 of the CIA Act of 1949, 50 U.S.C. § 3507, and Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1). Therefore, pursuant to FOIA exemptions (b)(1) and (b)(3), the CIA can neither confirm nor deny the existence or nonexistence of these records.

This concludes our response to the above referenced request.

Sincerely,

Allison Fong
Information and Privacy Coordinator

Central Intelligence Agency



Washington, D.C. 20505

18 March 2019

Avi Asher-Schapiro
Committee to Project Journalists
330 7ᵗʰ Ave, 11ᵗʰ Floor
New York, NY 10001

Re: F-2019-00158; 18-cv-02709

Dear Mr. Asher-Schapiro:

This letter is in response to the 19 October 2018 Freedom of Information Act (FOIA) request submitted by Ramya Krishnan for the following:

1) All procedures or guidance for determining whether to warn, or for delivering a warning to, an intended victim or those responsible for protecting the intended victim, pursuant to Directive 191;

2) All records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, including any records relating to duty to warn actions taken with respect to him;

3) All records concerning any "issue aris[ing] among IC elements" regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him. *See* Directive 191. §G.1.

We processed the request in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 3141, as amended.

With regard to item 1, we completed a thorough search for records responsive to the request and determined that three (3) documents can be released in segregable form with redactions made on the basis of FOIA exemptions (b)(1) and (b)(3). In addition, it has been determined that the remaining records must be denied in their entirety on the basis of FOIA exemptions (b)(1), (b)(3), and (b)(5). Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507 and/or Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1).

With regard to items 2 and 3, in accordance with section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request. The fact of the existence or nonexistence of such records is itself currently and properly classified and relates to CIA intelligence sources and methods information that is protected from disclosure by Section 6 of the CIA Act of 1949, 50 U.S.C. § 3507, and Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1). Therefore, pursuant to FOIA exemptions (b)(1) and (b)(3), the CIA can neither confirm nor deny the existence or nonexistence of these records.

This concludes our response to the above referenced request.

Sincerely,

Allison Fong
Information and Privacy Coordinator

# Exhibit D

Central Intelligence Agency



Washington, D.C. 20505

29 March 2019

Avi Asher-Schapiro
Committee to Project Journalists
330 7th Ave, 11th Floor
New York, NY 10001

Reference: CIA Case No. F-2019-01234; DOS Case No. F-2019-00752; 18-cv-02709

Dear Mr. Asher-Schapiro:

In the course of processing the 19 October 2018 Freedom of Information Act (FOIA) request submitted by Ramya Krishnan, the Department of State (DOS) located CIA material responsive to part 1 of the request and referred it to us for review and direct response to you. The request was for the following:

1) All procedures or guidance for determining whether to warn, or for delivering a warning to, an intended victim or those responsible for protecting the intended victim, pursuant to Directive 191;
2) All records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, including any records relating to duty to warn actions taken with respect to him;
3) All records concerning any "issue aris[ing] among IC elements" regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him. *See* Directive 191. §G.1.

We reviewed the referred CIA material in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 3141, as amended.

It has been determined that the material must be denied in its entirety on the basis of FOIA exemptions (b)(1), (b)(3), (b)(5), and (b)(6). Exemption (b)(3) pertains to Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507 and/or Section 102A(i)(l) of the National Security Act of 1947, 50 U.S.C § 3024(i)(1).

This completes our response to the above referenced referral.

Sincerely,

Riggs Monfort
Information and Privacy Coordinator