IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> CENTRAL INTELLIGENCE AGENCY, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:18-cv-2709 (TNM) |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO ISSUE

Pursuant to Local Civil Rule 7(h)(1), remaining Defendants Central Intelligence Agency ("CIA"), Federal Bureau of Investigation ("FBI"), and National Security Agency ("NSA"), and the Office of the Director of National Intelligence ("ODNI") (collectively, "remaining Defendants" or "Defendants") respectfully submit the following statement of material facts as to which there is no genuine dispute.[1]

### I.   Plaintiffs' FOIA Requests and the Initiation of This Action

1. On October 19, 2018, former Plaintiff Knight First Amendment Institute at Columbia University ("Knight Institute") submitted the following FOIA requests to the CIA, FBI, NSA, and ODNI, as well as former Defendant DoS:

---

[1] As explained below, former Defendant Department of State ("DoS") has been dismissed from this suit (without prejudice to Plaintiffs' ability to seek attorney's fees at a later point in these proceedings). Accordingly, facts related to DoS's response to Plaintiffs' FOIA requests are not set forth in this filing, except incidentally to facts involving the remaining Defendants.

  (1) All procedures or guidance for determining whether to warn, or for delivering a warning to, an intended victim or those responsible for protecting the intended victim, pursuant to Directive 191 [("Part 1")];

  (2) All records concerning the duty to warn under Directive 191 as it relates to Jamal Khashoggi, including any records relating to duty to warn actions taken with respect to him [("Part 2")];

  (3) All records concerning any 'issue aris[ing] among IC elements' regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him. *See* Directive 191, § G.1 [("Part 3")].

First Amended Complaint ("FAC"), Dkt. No. 17, ¶¶ 15, 17; Dkt. No. 17-1 (the Knight Institute's October 19, 2018 requests).

 2. In addition, the Knight Institute also sought—from ODNI only—a fourth category of documents:

  (4) All records relating to any dispute referred to the [O]DNI regarding a determination to warn Jamal Khashoggi or waive the duty to warn requirement, or regarding the method for communicating threat information to him. *See* Directive 191, § G2 [("Part 4")].

FAC ¶ 18; Dkt. No. 17-1.

 3. On November 20, 2018, Plaintiff CPJ submitted substantively identical requests to the same agencies. FAC ¶ 16 and fn. 2; Dkt. No. 17-2.

 4. Also on November 20, 2018, the Knight Institute initiated the instant civil proceeding. Dkt. No. 1.

 5. On January 2, 2019, the Court granted Defendants' motion to stay proceedings in light of the then-extant lapse in appropriations to the U.S. Department of Justice ("DOJ"), as well as several of the Defendant agencies. *See* Dkt. No. 15 (Defendants' Motion to Stay); January 2,

2019 Minute Order (staying proceedings "until Congress has restored appropriations to the Department of Justice").

6.   On January 17, 2019, the Court granted the Knight Institute's motion to temporarily lift the stay, for the limited purpose of allowing the filing of the First Amended Complaint, which added CPJ as a party to the suit. January 17, 2019 Minute Order.

7.   On the same day, the Knight Institute and CPJ filed the FAC. Dkt. No. 17.

## II.   Defendants' Responses to the FOIA Requests

8.   Following the restoration of federal appropriations to the DOJ and the affected Defendant agencies, the Court lifted the temporary stay, January 29, 2019 Minute Order, and the Defendants moved forward with the processing of Plaintiffs' requests. The remaining Defendants responded to these requests, respectively, as follows.

### A.   ODNI

9.   ODNI responded to Plaintiffs' FOIA requests on February 14, 2019. Declaration of Patricia Gaviria ("Gaviria Decl.") ¶ 12 & Ex C thereto. ODNI informed Plaintiffs that it had conducted and completed a search as to Part 1 of the requests, and had located responsive records, all of which had originated with other Defendant agencies. *Id.* Accordingly, ODNI informed Plaintiffs that these records had been referred to the respective other agencies for processing and production. *Id.*[2]

---

[2] As the Gavira Declaration additionally clarifies, there were two such documents, one of which originated with the CIA and the other of which originated with NSA. Gavira Decl. ¶ 11. CIA and NSA processed these respective documents and provided final responses regarding the same to Plaintiffs. *See* Shiner Decl. ¶ 12; Kiyosaki Decl. ¶ 13 n. 4.

10. In the same letter, ODNI further informed Plaintiffs that pursuant to FOIA Exemptions 1 and 3, it could neither confirm nor deny the existence of records responsive Parts 2, 3, or 4 of the requests. *Id.* Specifically, ODNI explained that the fact of the existence or non-existence of such records "is itself currently and properly classified, and could reveal intelligence sources and methods information that is protected from disclosure pursuant to Section 102A(i)(1) of the National Security Act of 1947[.]" *Id.*

### B. NSA

11. NSA responded to Plaintiffs' FOIA requests on March 11, 2019. Declaration of Linda M. Kiyosaki ("Kiyosaki Decl.") ¶ 13 & Ex. B thereto. NSA informed Plaintiffs that it had conducted and completed a search as to Part 1 of the requests, and had located two responsive records, totaling 21 pages, which it simultaneously produced, in part, to Plaintiffs. *Id.*

12. In the same letter, NSA further informed Plaintiffs that pursuant to FOIA Exemptions 1 and 3, it could neither confirm nor deny the existence of records responsive Parts 2 or 3 of the requests. *Id.* Specifically, NSA explained that the fact of the existence *or non-existence* of such records "is a currently and properly classified matter," and that "the existence or non-existence of the information" is also protected from disclosure by 18 U.S.C. § 798, 50 U.S.C. §§ 3024(i), 3605. *Id.*

### C. CIA

13. The CIA initially responded to Plaintiffs' FOIA requests on March 15, 2019. Declaration of Antoinette B. Shiner ("Shiner Decl.") ¶ 13 & fn. 3 & Ex. C thereto. CIA informed Plaintiffs that it had conducted and completed a search as to Part 1 of the requests, and had located responsive records. *Id.*

14. With respect to Request 1, CIA simultaneously produced in part three records, totaling 19 pages, and withheld in full two additional records. *Id.* CIA's redactions to the documents produced in part were pursuant to FOIA Exemption 1 and 3, and its withholdings of the documents in full were pursuant to FOIA Exemptions 1, 3, 5, and 6. *Id.*; *see id.* Ex. A (*Vaughn* index).

15. In the same letter, CIA further informed Plaintiffs that pursuant to FOIA Exemptions 1 and 3, it could neither confirm nor deny the existence of records responsive Parts 2 or 3 of the requests. Shiner Decl. ¶ 13 & Ex. C thereto. Specifically, CIA explained that the fact of the existence or non-existence of such records "is itself currently and properly classified and relates to CIA intelligence sources and methods information that is protected from disclosure by Section 6 of the CIA Act of 1949, 50 U.S.C. § 3507, and Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024(i)(1)." *Id.*

16. By letter dated March 29, 2019, the CIA provided a supplemental response to Plaintiffs. Shiner Decl. ¶¶ 14-15 & Ex. D thereto.[3] As the CIA explained in its supplemental response, in the course of preparing its own response to Plaintiffs' FOIA requests, DoS had located two CIA-originated records that are responsive to Request 1. *Id.* After DoS referred these records to CIA for processing, CIA determined that the records were required to be withheld in full on the basis of FOIA Exemptions 1, 3, 5, and 6. *Id.*; *see also id.* Ex. A.

---

[3] CIA's supplemental letter is dated March 29, 2019, but was forwarded to Plaintiffs via email by the undersigned defense counsel on April 5, 2019.

### D. FBI

17. FBI responded to Plaintiffs' FOIA requests on March 29, 2019. Declaration of David M. Hardy ("Hardy Decl.") ¶ 18 & Ex. C thereto. FBI informed Plaintiffs that it had conducted and completed a search as to Part 1 of the requests, and had located eight responsive records, totaling 33 pages, which it simultaneously produced, in part, to Plaintiffs. *Id.*

18. In the same letter, FBI further informed Plaintiffs that pursuant to FOIA Exemptions 1 and 3, it could neither confirm nor deny the existence of records responsive Parts 2 or 3 of the requests. *Id.* Specifically, FBI explained that "the mere acknowledgement of such records['] existence or nonexistence would in and of itself trigger harm to national security interests per Exemption (b)(1) and/or reveal intelligence sources and methods per Exemption (b)(3); 50 U.S.C. § 3024(i)(1)." *Id.*

19. On May 14, 2019, after determining upon further review that additional information on one page of its March 29, 2019 production could be segregated for release, FBI produced to Plaintiffs a revised version of this page, disclosing additional information. Hardy Decl. ¶ 19 & Ex. D thereto.

### III.   Plaintiffs' Narrowing of Claims and Issues for Resolution by the Court

20. In a Joint Status Report filed on June 28, 2019, the parties informed the Court that all Defendants had completed their searches and processing, and provided final productions. Dkt. No. 28.

21. In the same filing, the parties additionally proposed a schedule for further proceedings; this schedule included, *inter alia*, a proposal that Plaintiffs identify all issues and

withholding they planned to challenge, if any, to Defendants by July 12, 2019. *Id.* The Court subsequently adopted this proposal. July 1, 2019 Minute Order.

22. In accordance with the Court July 1, 2019 Order, on July 12, 2019 counsel for Plaintiffs emailed defense counsel, stating:

> We write to inform you that the Committee to Protect Journalists ("CPJ") will challenge the Glomar responses for the FBI, CIA, ODNI, and the NSA. In addition, CPJ will challenge the CIA's redactions with respect to the three documents that it produced, the remaining documents that it withheld in response to item 1 in the FOIA request, and the remaining documents that it withheld in coordination with the Department of State. We request that the CIA provide a Vaughn Index.
>
> The Knight Institute has decided to withdraw from the litigation and will be seeking the government's consent to file a stipulation of dismissal pursuant to FRCP 41(a)(1)(A)(ii). The Knight Institute intends to stipulate to the dismissal of its claims in this action, while reserving its right to move for attorneys' fees.

Defendants' Exhibit ("DEX") 1.

23. Consistent with these representations, on July 18, 2019, former Defendant Knight Institute voluntarily dismissed its claims as against all Defendants, without prejudice to its ability to seek an award of attorney's fees and other litigation costs at a later point in these proceedings. Dkt. No. 29; *see also* July 19, 2019 Minute Order (so ordering the stipulation of dismissal).

24. On July 25, 2019, remaining Plaintiff CPJ further dismissed any and all claims against former Defendant DoS, also without prejudice to seek attorney's fees and costs from DoS at a later point in the litigation. Dkt. No. 30; *see also* July 30, 2019 Minute Order (so ordering DoS's dismissal).

                                    Respectfully submitted,

                                    JOSEPH H. HUNT

Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/
Antonia Konkoly
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, Room 11110
Washington, DC 20005
(202) 514-2395 (direct)
(202) 616-8470
antonia.konkoly@usdoj.gov

*Counsel for the Defendants*

DATED: August 28, 2019